917 F.2d 918
 59 USLW 2296, 20 Bankr.Ct.Dec. 1927,
Bankr. L. Rep. P 73,667
 Robert Charles ASHBROOK, Rose Marie Elaine Ashbrook,
Plaintiffs-Appellants,
v.
John BLOCK, Individually and in his capacity as Secretary of
U.S. Department of Agriculture; Allen Brock, Individually
and in his capacity as Acting Assistant Administrator of the
Farmers Home Administration; Charles Shuman, Individually
and in his capacity as Acting State Director for Michigan;
Calvin Lutz, Individually and in his capacity as District
Director; Richard Keech, Individually and in his capacity
as District Director; William J. Gregor, Individually and
in his capacity as County Supervisor; United States
Department of Agriculture, United States of America,
Defendants-Appellees.
 No. 89-1443.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 5, 1989.
Decided Oct. 25, 1990.
 
 Paul B. Newman (argued), Newaygo, Mich., for plaintiffs-appellants.
 Edith A. Landman (argued), Office of the U.S. Atty., Grand Rapids, Mich., for defendants-appellees.
 Before MARTIN, JONES and GUY, Circuit Judges.
 NATHANIEL R. JONES, Circuit Judge.
 
 
 1
 Plaintiffs-appellants, Robert Charles Ashbrook and Rose Marie Elaine Ashbrook (the Ashbrooks) appeal the dismissal of their lawsuit against the United States, the Farmers Home Administration (FmHA) and various federal and local officials within the FmHA. The Ashbrooks' action, sounding in tort, contract law and constitutional tort, was brought as an adversary proceeding in the United States Bankruptcy Court for the Western District of Michigan pursuant to 11 U.S.C. Sec. 106(a). Although the Ashbrooks raise several issues on appeal, we believe the most significant question presented is whether a counterclaim brought pursuant to 11 U.S.C. Sec. 106(a) or (b) (1988) seeking damages against an agency of the United States obviates the filing of an administrative claim pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. Secs. 1346(b) and 2671 et seq. We hold that it does.
 
 I.
 
 2
 The Ashbrooks have operated a hog and apple farm in Van-Buren County, Michigan since 1976. They had acquired several loans from the FmHA totalling $659,355.73 as of October 10, 1985. Although the Ashbrooks have not made a payment on their indebtedness since 1979, the FmHA had not, as of the date this appeal was briefed, accelerated the Ashbrooks' account or foreclosed on their farm. The Ashbrooks' first loan from the FmHA was in part for the purpose of constructing a farrowing barn. The Ashbrooks hired Jerry L. Brower to construct the barn, but Brower delayed to the point that the Ashbrooks sought the assistance of William J. Gregor, a County Supervisor for the FmHA, in order to coax Brower into performing.
 
 
 3
 The Ashbrooks maintain that when they began looking for other contractors in November of 1979, Gregor informed them that they would have to allow Brower to complete the barn, even though Brower's initial work was slow and defective. However, the record reflects that Gregor merely informed the Ashbrooks that the FmHA would not pay the difference if they hired a more expensive contractor. J.App. at 127-28. Soon after Brower completed the barn, a section of its floor collapsed while hogs were upon it. The Ashbrooks attempted to acquire another loan from the FmHA to replace the injured livestock, but they were informed that they did not qualify. Brower refused to repair the barn until the Ashbrooks cleaned the site. Gregor also determined that the Ashbrooks should clean the site prior to requiring Brower to repair the floor. The Ashbrooks were unable to meet this demand, and the barn was left unrepaired. The Ashbrooks sued Brower for his faulty construction of the farrowing barn. The suit was settled in 1984 but the Ashbrooks' total unrecovered loss was $73,741.60.
 
 
 4
 In 1983, Robert Ashbrook filed a petition for relief under Chapter 11 of the Bankruptcy Code. In 1985, Rose Marie Ashbrook also filed a Chapter 11 petition. Robert and Rose Marie's cases were consolidated on December 31, 1985. The FmHA filed a proof of claim on June 23, 1983 for $573,160.87. On August 20, 1985, the Ashbrooks filed what purported to be a compulsory counterclaim under 11 U.S.C. Sec. 106(a), commencing an advisory proceeding against the Secretary of United States Department of Agriculture, John Block, individually and in his official capacity, the Department of Agriculture, and numerous federal and local officials within the FmHA: Allen Brock, individually and in his capacity as Acting Assistant Administrator for Farmer Programs and former Acting Administrator of the Farmers Home Administration; Charles Shuman, individually and in his capacity as Acting State Director for Michigan; Calvin Lutz, individually and in his capacity as Acting State Director for Michigan; Richard Keech, individually and in his capacity as District Director; William J. Gregor, individually and in his capacity as County Supervisor. The gist of the Ashbrooks' complaint is that FmHA officials failed to abide by regulations promulgated pursuant to the Consolidated Farm and Rural Development Act (CFRDA), 7 U.S.C. Sec. 1989 (1988) in their transactions with the Ashbrooks.[1] The Ashbrooks' complaint alleges tort and contract violations as well as a violation of the due process clause of the fifth amendment based on the following conduct by FmHA officials:
 
 
 5
 Total failure to comply with the aforesaid CFRDA and its regulations ... specifically but not limited to failure to provide management assistance and supervision, credit counselling, and failure to defer or extend payments as provided for in the aforesaid regulations.
 
 
 6
 * * * * * *
 
 
 7
 Failure to provide reduction of payments to provide sufficient monies to pay living and operating expenses as provided by 7 U.S.C. 1981a.
 
 
 8
 Failure to inform Plaintiff of his rights to consolidation, rescheduling, remortization and deferral of his indebtedness to the FmHA.
 
 
 9
 Refusing and denying Plaintiff's requests and applications for Operating and Emergency Loans.
 
 
 10
 Wrongfully denying Plaintiff income to which he was otherwise entitled to from the operation of his pig herd.
 
 
 11
 Wrongfully accusing Plaintiff of poor management and laziness when FmHA was remiss in its obligation to assist Plaintiff in the management of his farm.
 
 
 12
 Id. at 82 (quoting "Complaint" at p. 8).
 
 
 13
 On September 3, 1985, the defendants-appellees moved to dismiss the Ashbrooks' action, or in the alternative, for summary judgment. Pursuant to 28 U.S.C. Sec. 157(c)(1), the bankruptcy court entered findings and recommendations in which it recommended granting the defendants-appellees' motion for summary judgment. Before submission of the matter to the district court, the bankruptcy court permitted the Ashbrooks to amend their complaint to add the United States as a defendant. By Judgment Order dated March 10, 1989, the district court adopted the bankruptcy court's report and recommendation granting the defendants-appellees summary judgment.
 
 II.
 
 14
 An appellate court's review of a district court's grant of summary judgment is de novo. Pinney Dock and Transport Co. v. Penn Corp., 838 F.2d 1445, 1473 (6th Cir.1988), cert. denied, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). Fed.R.Civ.P. 56(c) authorizes a court to enter summary judgment on a claim if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." The nonmoving party must make a showing adequate to establish the existence of an essential element of his case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Although the nonmoving party's evidence in opposition to summary judgment need not be of the sort admissible at trial, he must employ proof other than his pleadings and own affidavits to establish the existence of specific triable facts. Id. at 324, 106 S.Ct. at 2553. An appellate court must view the evidence in the light most favorable to the opponent of the summary judgment motion. Glenway Industries, Inc. v. Wheelabrator-Frye, Inc., 686 F.2d 415, 417 (6th Cir.1982) (per curiam).
 
 A. Jurisdiction Under 11 U.S.C. Sec. 106(a)
 
 15
 The Ashbrooks contend they are not required to file an administrative claim with the FmHA before countersuing that agency in bankruptcy court because 11 U.S.C. Sec. 106(a) provides that "[a] governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose." The United States is insulated from suit by sovereign immunity unless it consents to be sued. Garrett v. United States, 640 F.2d 24, 26 (6th Cir.1981) (per curiam). "A corollary to this doctrine of governmental immunity is that, when the United States consents to be sued, Congress may define the conditions under which suit will be permitted." Id. The defendants-appellees maintain that the Ashbrooks may only sue the United States for tort damages under the FTCA, 28 U.S.C. Secs. 1346(b) and 2671 et seq. The FTCA grants exclusive jurisdiction to the district courts "on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office of employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Id. at Sec. 1346(b).[2] A claimant may not file suit under the FTCA unless he first files an administrative claim with the agency against which there is a grievance. Id. at Sec. 2675(a); Garrett, 640 F.2d at 26. The Ashbrooks did not file an administrative claim prior to commencement of the instant action because they believed that 11 U.S.C. Sec. 106(a) did not require such a filing. We are presented with the task of harmonizing 11 U.S.C. Sec. 106(a), which on its face has no administrative exhaustion requirement, and 28 U.S.C. Sec. 2675(a).
 
 
 16
 In gleaning the legislative intent of these two statutes, we are guided by the Supreme Court's teachings in Morton v. Mancari, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974): "The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective. 'When there are two acts upon the same subject, the rule is to give effect to both if possible.... The intention of the legislature to repeal must be clear and manifest.' " (Citations omitted.)
 
 
 17
 The 1966 amendments to the FTCA creating an absolute requirement of administrative exhaustion were "intended to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." S.Rep. No. 1327, 89th Cong., 2d Sess., reprinted in 1966 U.S.Code Cong. & Admin.News 2515, 2516. Congress concluded that federal agencies should be empowered to settle the claims against them because the agencies have the best information concerning the events which gave rise to the claims. Id. at 2517 & 2519. A conclusion that the administrative exhaustion requirement of section 2675(a) does not apply to counterclaims brought pursuant to 11 U.S.C. Sec. 106(a) would repeal the operation of the FTCA's well-established exhaustion requirement in the bankruptcy context. Because repeals by implication are not favored by courts, Morton, 417 U.S. at 551, 94 S.Ct. at 2483, we have examined the legislative history of section 106(a) for some affirmative indication that Congress intended to exempt actions brought under this provision from the FTCA's exhaustion requirement.
 
 
 18
 We have found such an indication in the relevant portion of the legislative history of the Bankruptcy Reform Act of 1978:
 
 
 19
 Section 106 provides for a limited waiver of sovereign immunity in bankruptcy cases. Though Congress has the power to waive sovereign immunity for the Federal government completely in bankruptcy cases, the policy followed here is designed to achieve approximately the same result that would prevail outside of bankruptcy.
 
 
 20
 * * * * * *
 
 
 21
 There is, however, a limited change from the result that would prevail in the absence of bankruptcy.... [T]he filing of a proof of claim against the estate by a governmental unit is a waiver by that governmental unit of sovereign immunity with respect to compulsory counterclaims, as defined in the Federal Rules of Civil Procedure. The governmental unit cannot receive a distribution from the estate without subjecting itself to any liability it has to the estate within the confines of a compulsory counterclaim rule. Any other result would be one-sided.
 
 
 22
 S.Rep. No. 989, 95th Cong., 2d Sess. 29, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5815 (emphasis added).
 
 
 23
 As the legislative history makes clear, Congress was cognizant at the time of section 106(a)'s passage that its prior enactments, such as the FTCA, had already waived the immunity of governmental agencies and had prescribed the conditions of their waiver. Although it is significant that Congress indicated its intent that the waiver of immunity under section 106(a) approximate the waiver which exists outside bankruptcy, we cannot ignore that Congress sought a "limited change." The purpose of permitting a party to bring a compulsory counterclaim once the government has filed a proof of claim is to remove the perceived unfairness of allowing the government to receive a distribution from the estate without being exposed to any liability. Consistent with this purpose, the legislative history of section 106(a) unequivocally conveys that the government's exposure to liability is automatic upon its filing a proof of claim. The legislative history makes no reference to administrative exhaustion in the context of a counterclaim under section 106(a). We believe that the government's automatic exposure to liability once it files a proof of claim is the "limited change" which Congress intended section 106(a) to effectuate. See Matter of Kenny, 75 B.R. 515, 521 (Bkrtcy.E.D.Mich.1987). ("The only condition imposed by [section 106] is that the governmental unit file a claim. The absence of an exhaustion of remedy requirement is consistent with the reason for adoption of 106--namely to permit an estate to assert claims against a governmental unit as a condition for such unit's receiving distribution from the estate. [I]t is reasonable to assume that if Congress had intended that a plaintiff, prior to instituting a tort action against a governmental unit in a bankruptcy case, exhaust his administrative remedies, it would have expressly so provided."); In re Shelby County Healthcare Services of Al, Inc., 80 B.R. 555, 561 (Bkrtcy.N.D.Ga.1987) (following Matter of Kenny ). We hold that section 106(a) contains no administrative exhaustion requirement.
 
 
 24
 The Ashbrooks, however, have failed to meet an additional requirement of section 106(a) because their counterclaim is not compulsory within the meaning of Fed.R.Civ.P. 13(a). A claim is a compulsory counterclaim under Rule 13(a) "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim...." The district court in the instant case adopted the bankruptcy court's factual finding that the FmHA's proof of claim related to loans that were made to the Ashbrooks from June 1978 to February 1980. Because most of the infringements cited in the Ashbrooks' complaint occurred after the loans were closed, the district court held that the counterclaim did not arise out of the same transaction as the loans. J.App. at 138. We agree. In order to be a compulsory counterclaim, the claim must bear a "logical relationship" to the opposing party's claim. In determining whether such a relationship exists, court ask:
 
 
 25
 1) Is there a logical relationship between the two claims?
 
 
 26
 2) Are the issues of fact and law raised by the claim and counterclaim largely the same?3) Would res judicata bar a subsequent suit on the counterclaim if the court were not to take jurisdiction?
 
 
 27
 4) Would substantially the same evidence support or refute both the claim and the counterclaim?
 
 
 28
 Maddox v. Kentucky Finance Co., Inc., 736 F.2d 380, 382 (6th Cir.1984). We are unable to answer any of these questions in the affirmative. The Ashbrooks seek to establish that FmHA officials' failure to render credit and management counselling and denial of operating and emergency loans caused them personal injury. In filing its proof of claim, however, the FmHA merely seeks to establish that the Ashbrooks owe the government a stated sum. The FmHA's claim and the Ashbrooks' counterclaim are incomparable. Accordingly, we hold that the Ashbrooks may not avail themselves of section 106(a)'s waiver of immunity.
 
 B.
 Jurisdiction Under 11 U.S.C. Sec. 106(b)
 
 29
 Although the district court in the instant case concluded that the jurisdictional prerequisites of the FTCA and section 106(a) had not been met, it held that 11 U.S.C. Sec. 106(b) permitted it to reach the merits of the Ashbrooks' claims. Section 106(b) provides: "There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate." The Senate Report on section 106(b) explains that "the estate may offset against the allowed claim of a governmental unit ... any claim the debtor ... has against the governmental unit ... without regard to whether the estate's claim arose out of the same transaction or occurrence as the government's claim. Under this provision, the setoff permitted is only the extent of the governmental unit's claim. No affirmative recovery is permitted." S.Rep. No. 989, 95th Cong., 2d Sess. 29-30 (1978), reprinted in 1978 U.S.Code & Admin.News 5815-5816 (emphasis added). Like section 106(a), the legislative history of section 106(b) evinces Congress' intent that the mere filing of a proof of claim by the governmental agency permits a party to file a counterclaim against that agency. See id. at 5815; Matter of Kenny, 75 B.R. at 521. We therefore reach the merits of the Ashbrooks' claims pursuant to section 106(b).
 
 III.
 
 30
 The Ashbrooks contend that they may maintain a Bivens[3] action against the United States and the individual defendants-appellees for deprivation of property rights under the fifth amendment to the United States Constitution. According to the Ashbrooks, the loan servicing and emergency loan provisions of the CFRDA and its applicable regulations are analogous to the property interests enunciated by the Supreme Court in Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Hence, once a farmer borrows money from the FmHA, he is entitled to loan servicing and emergency loans and cannot be deprived of these entitlements without due process of law.
 
 
 31
 The Ashbrooks' Bivens claim against the United States is barred by sovereign immunity. See Jaffee v. United States, 592 F.2d 712, 717 (3d Cir.1979) (Bivens action may be brought against government officials, not the government itself). The fifth amendment claim against the individual defendants also fails for several reasons. Insofar as the Ashbrooks' fifth amendment claim is based on the FmHA's failure to inform them of their rights of consolidation, rescheduling or deferral, this court has held that there is no due process right to formal notice of these options. Ramey v. Block, 738 F.2d 756, 762 (6th Cir.1984). Likewise, the Ashbrooks do not possess a protected property interest in additional FmHA funding. DeJournett v. Block, 799 F.2d 430, 431 (8th Cir.1986); Carson v. Block, 790 F.2d 562, 567 (7th Cir.1986), cert. denied, 479 U.S. 1017, 107 S.Ct. 669, 93 L.Ed.2d 721 (1986).
 
 
 32
 The Ashbrooks' broad complaint that FmHA officials failed to provide management assistance and credit counseling pursuant to CFRDA regulations cannot be employed as a catchall basis for a fifth amendment claim. The Supreme Court has recognized that regulations which are mandatory in nature and leave officials little discretion in the manner in which they carry out a program may confer upon intended beneficiaries an interest protected by the due process clause. See Hewitt v. Helms, 459 U.S. 460, 469-72, 103 S.Ct. 864, 870-71, 74 L.Ed.2d 675 (1983) (explicitly mandatory language in state regulations regarding administrative segregation within prisons sufficient to conclude that state created a protected liberty interest for inmates). However, the regulations on which the Ashbrooks rely are largely, if not wholly, discretionary in nature. 7 C.F.R. Sec. 1924.59 provides:
 
 
 33
 Sec. Supervision.
 
 
 34
 (a) Purpose. Supervision will be given by the County Supervisor to protect the government's interest and to accomplish the purpose of the loan.
 
 
 35
 (b) Responsibility of County Supervisor. The County Supervisor will determine and select the appropriate method of supervision to be used for each borrower.
 
 
 36
 (c) Supervisory Methods. Supervision may be given through farm visits, review of farm records, collateral inspections, meetings with borrowers on an individual or group basis, letters, telephone, etc. A complete record of each visit, meeting, or other contact will be made in the case file running record, underscoring those items which require follow-up action. The record must state the advice that was given and any problems noted.
 
 
 37
 We agree with the court's analysis in Bass v. United States Dept. of Agriculture, 737 F.2d 1408, 1415 (5th Cir.1984), a case in which a farmer challenged FmHA officials' denial of an emergency loan request:
 
 
 38
 What [the plaintiff's] contention does not face is that if his view were to prevail, every case involving a discretionary administrative decision would automatically become a constitutional case merely by allegation that the law was otherwise than the decision reached. Yet the entire issue in the judicial review of administrative action always is whether the administrative decision was erroneous. The Constitution is not implicated unless the decision goes beyond mere error to an intentional or reckless disregard of the constitutional rights of the person against whom the administrative decision is made. Mere failure to make the 'correct' administrative decision does not rise to the level of a constitutional violation. (Emphasis added.)
 
 
 39
 See also Carson, 790 F.2d at 566 ("[A]n interest is 'property' only if there is an entitlement that stands or falls on the application of rules to facts. 'To the extent a request appeals to discretion rather than to rules, there is no property.' ") (citation omitted). We conclude that none of the regulations relied on by the Ashbrooks as a basis for their constitutional claim creates an entitlement protected by the due process clause of the fifth amendment.
 
 
 40
 We note that even if the failure to provide loan servicing and emergency loans were cognizable as a Bivens action, the individual FmHA officials are protected by qualified immunity. The constitutional violation for which a government official is held liable must be clearly established under existing precedent. Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); Poe v. Haydon, 853 F.2d 418 (6th Cir.1988), cert. denied, 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989). As the foregoing discussion illustrates, it was not clearly established at the times in question that CFRDA regulations created an entitlement in loan recipients to credit counseling and continued financial assistance.
 
 IV.
 
 41
 The Ashbrooks claim a private right of action against the defendants-appellees for their alleged violations of CFRDA. A private right of action may be implied from a regulation if: 1) the statute under which the rule was promulgated can fairly be said to imply a private right of action, and 2) the regulations under the statute can be read to imply a private right of action. Argelastro v. Prudential-Bache Securities, 764 F.2d 939, 947 (3d Cir.1985), cert. denied, 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985). 7 U.S.C. Sec. 1989, the statute pursuant to which the regulations in question were promulgated, provides:
 
 
 42
 The Secretary is authorized to make such rules and regulations, prescribe the terms and conditions of making or insuring loans, security instruments and agreements, except as otherwise specified herein, and make such delegations of authority as he deems necessary to carry out this chapter.
 
 
 43
 In examining this statute, our "central inquiry [is] whether Congress intended to create, either expressly or by implication, a private cause of action." Touche Ross & Co. v. Reddington, 442 U.S. 560, 575, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979). On its face, section 1989 is merely a general enabling statute, and we have found no indication from its legislative history that Congress intended to imply a private right of action. In light of the strictly procedural nature of this statute, we have little difficulty concluding that the Ashbrooks have no implied right of action under the CFRDA regulations.
 
 V.
 
 44
 The Ashbrooks also allege a cause of action under Michigan's "good samaritan" doctrine. The doctrine provides that when one voluntarily performs services for another, he must exercise due care in the course of his performance or be liable to the recipient of his services for any harm resulting from his failure to exercise due care. Smith v. Allendale Mut. Ins. Co., 410 Mich. 685, 303 N.W.2d 702, 706 (1981). The Ashbrooks contend that because they are worse off than if the FmHA had complied with the law, FmHA is liable to them under the good samaritan doctrine.
 
 
 45
 The good samaritan doctrine, however, requires that the defendant undertake to act and do so negligently. Hart v. Ludwig, 347 Mich. 559, 79 N.W.2d 895 (1956). In the instant case, the Ashbrooks complain that FmHA officials failed to act by not providing them loan servicing. "The plaintiffs do not allege that the individuals or the government undertook to render services to them and performed those services negligently.... The plaintiffs have thus failed to allege a fundamental element of a 'good samaritan' action." Matter of Kenny, 75 B.R. at 526.
 
 VI.
 
 46
 The Ashbrooks state a claim for breach of contract based on the failure of FmHA to abide by the loan servicing regulations which was incorporated by reference into the loan agreements between FmHA and the Ashbrooks. Because the regulations on which the Ashbrooks premise their contract claim are discretionary, the FmHA did not obligate itself to fulfill any duties besides providing the Ashbrooks with the stated amounts of the loans. We therefore find this claim to be without merit.
 
 VII.
 
 47
 The Ashbrooks finally urge this court to apply equitable subordination against the FmHA's claim pursuant to 11 U.S.C. Sec. 510(c)(1). We may do so only if the FmHA is guilty of misconduct such as "(1) fraud, illegality, breach of fiduciary duties; (2) undercapitalization; and (3) claimant's use of the debtor as a mere instrumentality or alter ego." Matter of Missionary Baptist Foundation of America, Inc., 712 F.2d 206, 212 (5th Cir.1983). The Ashbrooks do not demonstrate conduct by FmHA that would warrant application of equitable subordination.
 
 VIII.
 
 48
 For the foregoing reasons, the district court's grant of summary judgment is AFFIRMED.
 
 
 
 [1]
 The Ashbrooks cite these specific regulations: 7 C.F.R. Secs. 1924.51 (general provision); 1924.60 (duties of County Supervisor to perform analysis of borrowers' farm operations); 1941.16(a)-(d) (authorizing FmHA to make loans for certain purposes); 1941.18(b)(2) & (4) ("Rates and Terms"), 1941(c)(1)-(3) (authorizing loan approval officials to consolidate, reschedule or defer loans at their discretion); 1951.33(a)-(e) (explanation to the borrower of how to consolidate, reschedule, and defer loans); 1951.40(1) & (2) (explanation to borrowers on how to defer and reamortize loans)
 
 
 [2]
 The Ashbrooks' claimed injuries are, inter alia, their loss of income, their Chapter 11 bankruptcy and mental anguish. J.App. at 82-83
 
 
 [3]
 Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)