The ESTATE OF Sue Ellen CURTIS, by
its personal representative, William
H. CURTIS Jr., Plaintiff,

v.

The PRUDENTIAL INSURANCE
COMPANY and Automatic Data
Processing, Inc., Defendants.

Civ. A. No. 92–76794.

United States District Court,
E.D. Michigan, S.D.

Nov. 29, 1993.

Randolph D. Phifer, Patterson, Phifer & Phillips, P.C., Detroit, MI, for Automatic Data Processing.

Peter A. Davis, Davis & Fajen, Ann Arbor, MI, for Estate of Sue Ellen Curtis.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Plaintiff William Curtis, Jr. filed this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, and related state law claims against defendants Prudential Insurance Company ("Prudential") and Automatic Data Processing, Inc. ("ADP") as personal representative on behalf of the estate of Sue Ellen Curtis. The case was originally filed in Washtenaw County Circuit Court, but defendants later removed the case to the Eastern District of Michigan. Plaintiff is seeking recovery of $86,000 in life insurance proceeds that he alleges defendants wrongfully paid to William Curtis, Sr. Each of the defendants has submitted a motion to dismiss and/or for summary judgment. For the reasons discussed below, the court will deny in part and grant in part the motions.

### I. Background

Sue Ellen Curtis was murdered on April 1, 1991. She was stabbed to death in her home. Her husband, William Curtis, Sr., and his homosexual lover, Todd Plamondon, were later convicted of the crime. Mrs. Curtis was an employee of ADP, and she was part of ADP's retirement plan that provided its employees with life insurance benefits. The parties agree that ADP's plan is covered by ERISA. At the time of her death, Mrs. Curtis listed her husband as the sole beneficiary of the policy. Prudential issued the policy and administers claims for the insurance under the plan. The policy provided for a $42,600 death benefit with an additional $42,600 in case of accidental death.

Soon after the murder, Plamondon was charged with the crime. On April 4, 1991, the *Ann Arbor News* reported a possible connection between Plamondon and Mr. Curtis. Two days later the newspaper reported more extensively on the ties between Mr. Curtis and Plamondon, but noted that the sheriff's department still did not list him as a suspect. On June 6, 1991, the *Ann Arbor News,* with a headline stating "Killer may be husband," reported that during a preliminary hearing, Plamondon's attorney said that Mr. Curtis may have murdered his wife.

On April 17, 1991, Mr. Curtis submitted a claim form for the death benefit to ADP. ADP then sent Prudential the claim form, Mrs. Curtis's death certificate, and a heavily redacted incident report written by the sheriff's department on the day of the murder. Prudential also requested that ADP forward any newspaper articles concerning Mrs. Curtis's murder. ADP did not send any. Under Prudential's own guidelines for claim administration, its investigators were obliged to "rule out" the beneficiary's involvement in a murder before making payment.

Prudential received the documents from ADP on July 22, 1991. Prudential then called the Washtenaw County Sheriff's Department and asked if there was any information as to whether Mrs. Curtis was the "aggressor" in the incident that led to her death. The sheriff's department responded that Mrs. Curtis had not been the aggressor. Prudential employees did not ask if Mr. Curtis was a suspect. On July 24, 1991, Prudential paid $86,000 plus interest to Mr. Curtis. He was arrested on September 3, 1991 and later convicted of his wife's murder. William Curtis, Jr. is the personal representative of the estate of his mother, Sue Ellen Curtis. He has brought this action alleging the following six counts: (I) claim for insurance proceeds based on Mr. Curtis's disqualification a beneficiary under MCLA § 700.251(3); (II) breach of fiduciary duties under ERISA; (III) breach of a third-party beneficiary con-

tract; (IV) negligence; (V) legal and equitable estoppel; and (VI) liability of Prudential for the acts of ADP. Each defendant has submitted an almost identical motion to dismiss and/or for summary judgment. Defendants contend that plaintiff's state law claims are preempted by ERISA and that plaintiff does not state a claim for breach of fiduciary duties.

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (citation omitted) (quoting Black's Law Dictionary 881 (6th ed. 1979)). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that bur-

den, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg,* 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted). *See Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## III. Analysis

Defendants argue that plaintiff's state law claims are preempted. They also contend that plaintiff cannot establish a claim for breach of fiduciary duties under ERISA. The court will address each of these arguments in turn.

### A. State Law Claims

#### 1. Preemption

ERISA provides for comprehensive regulation of employee benefit plans. 29 U.S.C.

§§ 1002, 1003. It contains an express provision that preempts state law claims that relate to a benefit plan. *Id.* § 1144. Section 1144(a) provides as follows:

> Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan....

*Id.* Section 1144(b) is a savings clause that exempts certain state laws from the preemptive effect of section 1144(a). State laws that "regulate[ ] insurance, banking or securities" are not preempted by ERISA. *Id.* § 1144(b)(2)(A).

■ The court finds that plaintiff's claims based on negligence, breach of a third party beneficiary contract, and state law legal and equitable estoppel are preempted by section 1144(a). It is clear that these claims relate to ADP's employee benefit plan. The Supreme Court has given wide preemptive effect to the "relate to" language of section 1144(a). *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987). Under this standard, plaintiff's state law claims are preempted.

■ The court also finds, however, that plaintiff's claim under MCLA § 700.251(3) is not preempted by ERISA because it falls under the savings clause for state insurance law of section 1144(b). Michigan law provides that

> [a] named beneficiary of a bond, life insurance policy, or other contractual arrangement who feloniously and intentionally kills or aids and abets the killing of the principal obligee or the individual upon whose life the policy is issued is not entitled to any benefit under the bond, policy, or other contractual arrangement, and it becomes payable as though the beneficiary predeceased the Decedent.

MCLA § 700.251(3). In *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), the Supreme Court provided guidance for determining whether a state law regulates insurance for purposes of section 1144(b)(2)(A). *See also Pilot Life,* 481 U.S. at 48–51, 107 S.Ct. at 1553–55. The Court advised that a "common-sense view" of the language of the savings clause should be taken. *Id.* 471 U.S. at 740, 105 S.Ct. at 2389. Furthermore, courts should utilize case law determining whether a practice falls under the "business of insurance" for purposes of the McCarran–Ferguson Act, 15 U.S.C. § 1011.[1] *Id.* Under this analysis, it is clear that MCLA § 700.251(3) regulates insurance. It is directed specifically at insurance companies, and it regulates the relationship between the companies and their policy holders. Since MCLA § 700.251(3) regulates insurance, it is not preempted by section 1144(a) of ERISA.

## 2. Plaintiff's Claim Under MCLA § 700.251

■ Even if section 700.251 is not preempted by ERISA, defendants argue that plaintiff has failed to state a cause of action. They point to another provision of the law that limits its effect upon insurance companies. MCLA § 700.251(7). Section 700.251(7) reads in relevant part as follows:

> An insurance company, financial institution, or other obligor making payment according to the terms of its policy or obligation is not liable by reason of this section unless prior to payment it received written notice of a claim under this section at its home office, principal place of business, or other place of business at which the deceased transacted business with such obligor.

*Id.* Defendants claim that because they never received written notice of any claim before Prudential made payment to Mr. Curtis on July 24, 1991, plaintiff does not state a cause of action under section 700.251(3). The court

---

1. The Supreme Court has listed three factors used under the McCarran–Ferguson analysis: (1) " 'whether the practice has the effect of transferring or spreading a policyholder's risk;' " (2) " 'whether the practice is an integral part of the policy relationship;' " and (3) " 'whether the practice is limited to entities within the insurance industry.' " *Pilot Life,* 481 U.S. at 48–49, 107 S.Ct. at 1553 (quoting *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982)).

agrees and finds that plaintiff has failed to state a claim upon which relief can be granted in the first count of his complaint. Plaintiff has made no showing that written notice of a claim was given to either Prudential or ADP before July 24, 1991.[2] Therefore, under Michigan law, plaintiff cannot recover from defendants under section 700.251(3).

## B. Fiduciary Duties Under ERISA

### 1. Recovery Under ERISA

Plaintiff claims that defendants breached their fiduciary duties under ERISA when they wrongfully paid the insurance proceeds to Mr. Curtis. Plaintiff's cause of action under ERISA arises from 29 U.S.C. § 1132. Under section 1132(a)(1)(B), a "civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan." Mrs. Curtis was a participant in ADP's plan. Had her husband not received the proceeds of the insurance policy, the proceeds would have gone to Mrs. Curtis's estate. As a result, her estate has standing to bring an action under section 1132(a)(1)(B) against defendants.

■ Defendants argue that plaintiff does not have a cause of action for breach of fiduciary duties as an individual participant in the plan. The court finds, however, that defendants' reasoning is inapplicable to this case. Defendants' reliance on *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) is misplaced. In *Russell,* the Court held that individuals could not raise extra-contractual claims under 29 U.S.C. § 1109. The Court, however, clearly limited its holding to ERISA claims under section 1109 and did address suits under section 1132. *Id.* at 139 n. 5, 105 S.Ct. at 3088 n. 5. Indeed, in a concurring opinion, three Justices specifically said that individuals could raise a claim for breach of fiduciary duties under section 1132. *Id.* at 148–58, 105 S.Ct. at 3093. Additionally, several courts have recognized ERISA

fiduciary duty actions by individuals similar to the complaint brought by plaintiff in this case. *See, e.g., Carland v. Metropolitan Life Ins. Co.,* 935 F.2d 1114 (10th Cir.1991); *Sladek v. Bell Sys. Management Pension Plan,* 880 F.2d 972 (7th Cir.1989).

■ Plaintiff contends that defendants breached a fiduciary duty in administering the life insurance claim. ERISA provides that

a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

29 U.S.C. § 1104(a)(1), (a)(1)(B). Plaintiff argues that based on the information that was readily available, defendants should not have paid Mr. Curtis as beneficiary of the policy. They were on notice to investigate further in order to "rule out" Mr. Curtis as the murderer of his wife. Defendants argue, however, that based on the information available to them at the time that the life insurance claim was paid, no fiduciary duty was breached.

The court finds that if defendants had, or should have had, notice that Mr. Curtis was suspected in his wife's murder, then defendants did not act in the interests of plan participant Sue Ellen Curtis. In this instance, plaintiff has raised genuine issues of material fact as to whether defendants had, or should have had, notice of the circumstances of the murder such that a prudent man, as defined by section 1104(a)(1)(B), would have delayed paying over the insurance proceeds to Mr. Curtis until the cloud surrounding the circumstances of the murder had cleared.

**2.** In his amended complaint, plaintiff makes the claim that defendants had actual or constructive notice that Mr. Curtis may be disqualified under section 700.251(3) based on the cloud surrounding the circumstances of Mrs. Curtis's death. That may be true, however, section 700.251(7)

requires that an insurance company or an obligor receive written notice before making payment in order to be liable for any wrongful payment. Because defendants did not receive the notice contemplated under the statute, any other notice it may have had is irrelevant.

## 2. Liability of ADP and Prudential

In order to be liable under ERISA, the defendants must have acted as fiduciaries as defined by the statute. The relevant section provides the following definition:

> a person is a fiduciary with respect to a plan to the extent [ ] he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Defendants basically acknowledge, and the court accepts, that Prudential acts as a fiduciary in administering the life insurance portion of ADP's plan.

■ ADP contends, however, that it is not a fiduciary under ERISA. ADP claims that it merely purchased an insurance policy from Prudential, who then exercised discretionary control and authority in determining the disposition of the life insurance proceeds. In a footnote, plaintiff argues that ADP is a fiduciary because it was involved in the investigation of the life insurance claim.

The court finds that defendant ADP did not act as a fiduciary in this case. The real authority under the life insurance portion of the plan lay with Prudential. ADP's involvement in the investigation was merely ministerial in nature. Employees of ADP acted at the request of Prudential in gathering claim information regarding Mrs. Curtis's death. The determination of who would receive the benefits lay completely with Prudential. The cases cited by plaintiff simply establish that insurance companies can be sued as fiduciaries, thus merely supporting plaintiff's claim against defendant Prudential. *See, e.g., Baker v. Big Star Div. of the Grand Union Co.*, 893 F.2d 288 (11th Cir.1989). In fact, the court in *Baker* noted that " 'a plan administrator who merely performs claims processing, investigatory, and record keeping duties is not a fiduciary.' " *Id.* at 290 (quoting district court's decision and citing *Howard v. Parisian, Inc.*, 807 F.2d 1560, 1564–65 (11th Cir.1987)). Thus, the facts presented by plaintiff support a finding that ADP's actions in investigating and processing Mr. Curtis's claim did not constitute the actions of an ERISA fiduciary. Given the circumstances, the court will grant defendant ADP's motion for summary judgment with regards to plaintiff's claim under ERISA.

## 3. Conclusion

The court finds that there are genuine issues of material fact concerning whether Prudential knew or should have known that Mr. Curtis may have killed his wife before it paid him the proceeds of the life insurance policy. Plaintiff has raised a sufficient question as to whether Prudential should have known that Mr. Curtis was suspected of the murder. Because plaintiff has shown that there are fact issues in dispute, the court will deny Prudential's motion for summary judgment with regards to plaintiff's claim under section 1132(a). The court also finds, however, that ADP did not act as fiduciary as defined by ERISA. As a result, the court will grant ADP's motion for summary judgment.

### ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED that defendant ADP's motion for summary judgment is **GRANTED**. The complaint against ADP is **DISMISSED** on the merits.

IT IS FURTHER ORDERED that defendant Prudential's motion for summary judgment as to Counts I, III, IV, and V is **GRANTED**.

IT IS FURTHER ORDERED that defendant Prudential's motion for summary judgment as to Counts II and VI is **DENIED**.

SO ORDERED.