NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0854n.06
Filed: October 18, 2005

No. 04-5579

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| KING RECORDS, INC., and GML, INC., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| COLLECTABLES, INC., | ) | MIDDLE DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |

Before: NELSON and SUTTON, Circuit Judges; ZATKOFF, District Judge.[*]

SUTTON, Circuit Judge. King Records and GML challenge the district court's resolution of their unjust enrichment claim against Collectables regarding the use of certain musical master recordings. Because Collectables has shown that licenses authorized all of the materials it produced with King's and GML's intellectual property, because Collectables has shown that it paid all royalties due for the use of this intellectual property and because King and GML have not provided competent evidence to dispute these facts, we affirm the district court's grant of summary judgment in favor of Collectables.

---

[*] The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

I.

King and GML are record companies that own the rights to the master recordings of songs performed by Gene Pitney, B.J. Thomas and The Shirelles. A master recording is an original recording from which copies may be made, and the master recordings at issue here are part of a collection known as the Springboard Catalogue. In the past 25 years, several different entities have owned rights to the Springboard Catalogue, three of which concern us here. In the early 1980s, CBS Special Products, otherwise known as Columbia Special Products ("Columbia"), purchased the Catalogue through a bankruptcy proceeding, and soon after sold it to Jey Production Co., Inc. Jey later sold it to another company, which in turn sold it to King and GML in 1984. *See* D. Ct. Op. at 2–3 (quoting *Thomas v. Lytle*, 104 F. Supp. 2d 906, 911 (M.D. Tenn. 2000)). King and GML have owned the Springboard Catalogue and the right to be compensated for its use since 1984.

Before King and GML owned the Catalogue, its previous owners licensed the material to other entities. While Jey still owned the Catalogue, for example, it conveyed rights to use the material to Marshall Sehorn, *id.* at 21; *Thomas*, 104 F. Supp. 2d at 911, who later contracted with Collectables, a company that manufactures and sells albums made from master recordings. And while Columbia owned the Catalogue, it also granted rights to use the material to Collectables.

Even after 1984, when King and GML owned the right to manufacture and release recordings created from the Springboard Catalogue, they did "not exploit[] these recordings by directly contracting with Collectables and other manufacturers." D. Ct. Op. 20. They "licensed the Springboard Catalogue" to intermediate parties who subsequently sublicensed portions of it to

numerous manufacturers, including Collectables. D. Ct. Op. at 20. For example, King and GML granted exclusive licensing rights to Highland Music, which then contracted with Collectables. *Id*.

This dispute arose in 2002 when King and GML concluded that Collectables had been using materials from the Catalogue without a license or without paying all royalties due under the license. Acting upon this belief, King and GML filed an unjust enrichment claim against Collectables in federal district court, alleging that when Collectables sold eleven products containing works created from master recordings in the Catalogue, it had done so without proper authority and without properly compensating King and GML. While admitting that it had sold products containing recordings from the Springboard Catalogue, Collectables maintained that it had done so under license agreements entered into with a previous owner of the Catalogue (Columbia), with a party who had a licensing agreement with a previous owner (Sehorn, through his agreement with Jey), or with an intermediary with whom King and GML had contracted (Highland). Collectables offered proof that it had paid royalties to each of these licensors for each of the products at issue. Though not disputing the existence of these agreements, King and GML claimed that Collectables had exploited the recordings beyond their scope. The district court granted Collectables' motion for summary judgment, concluding that King and GML had failed to establish a material fact dispute about whether Collectables had used the master recordings in the Catalogue in an unauthorized manner. D. Ct. Op. at 30. King and GML now appeal the district court's decision, which we review de novo. *See EEOC v. Univ. of Detroit*, 904 F.2d 331, 334 (6th Cir. 1990).

II.

The Tennessee doctrine of unjust enrichment, the parties agree, governs this dispute. Under that doctrine, even though King and GML did not have a licensing contract with Collectables, they still may have a cognizable claim against Collectables if King and GML conferred a benefit upon Collectables under circumstances that would make it "inequitable for [Collectables] to retain the benefit" without compensating King and GML for its value. *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966); *see also Whitehaven Community Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998) ("Unjust enrichment is a quasi-contractual theory or is a contract implied-in-law in which a court may impose a contractual obligation where one does not exist."); *Crye Leike, Inc. v. Ouer*, No. W2003-02590-COA-R3-CV, 2004 Tenn. App. LEXIS 752, at *5–6 (Tenn. Ct. App. Nov. 16, 2004) ("The doctrine of unjust enrichment is founded upon the principle that someone who receives a benefit desired by him, under circumstances rendering it inequitable to retain it without making compensation, must do so.") (quotations omitted).

A.

In claiming that Collectables has been unjustly enriched at their expense, King and GML first argue that Collectables sold products after its license with Columbia had expired. The undisputed evidence, however, does not support this claim.

Collectables signed its license with Columbia on November 9, 1983, and King and GML claim that because the agreement "expressly provides for a term of *only* two years and no renewal,"

it must have "expired on November 9, 1985." App't Br. at 19–20. As evidence of sales by Collectables after its license expired, King and GML point to the "White Report," *see* App't Br. at 20, a document prepared by an expert in a related case before the same district court judge that presided over this case. *See Thomas*, 104 F. Supp. 2d at 919–20. But in *Thomas* the court excluded the White Report because it was based on inflated assumptions that lacked a reasonable basis. *Id*., *aff'd, Thomas v. Lytle*, No. 01-5005, 2002 U.S. App. LEXIS 24626 (6th Cir. Dec. 3, 2002). Not surprisingly, the district court reiterated this conclusion when it rejected King's and GML's reliance on the White Report here. *See* D. Ct. Op. at 5.

In support of this claim, King and GML do not contend that they provided any evidence other than what the White Report contains. And they do not claim that the district court committed reversible error in performing its gatekeeping role in excluding the White Report. *See* Fed. R. Evid. 702*; Munoz v. Orr*, 200 F.3d 291, 300–02 (5th Cir. 2000) (holding that a "district court acted well within its discretion in evaluating the reliability of [an expert's] evidence at the summary judgment stage" and noting "if the basis for an expert's opinion is clearly unreliable, the district court may disregard that opinion in deciding whether a party has created a genuine issue of material fact," because "[b]oth the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under Fed. R. Evid. 702" (citing *Kumho Tire Co., Ltd. v. Carmichael*, 119 S. Ct. 1167, 1176 (1999)) (other citations and quotations omitted)). Under these circumstances, we have little choice but to reject this claim of unjust enrichment. Because King and GML have failed to point to any credible evidence showing

that Collectables exceeded the scope of its license with Columbia, the district court properly disposed of this claim on summary judgment. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."); *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir. 1990) (The party opposing summary judgment "must employ proof other than his pleadings and own affidavits to establish the existence of specific triable facts.").

B.

King and GML next argue that Collectables did not pay all royalties due under the Collectables-Highland sublicense. Under King's and GML's licensing agreement with Highland, King and GML are entitled "to receive 85% of the income Highland received under its own agreements with any sublicensees." D. Ct. Op. at 21. Although this agreement did not give King and GML a right to receive royalties directly from Collectables, they argue that Collectables underpaid Highland, which meant that King and GML did not receive all of the compensation from Highland to which they were entitled. The factual premise of this argument, however, also has not been established.

King and GML admitted below that "[a]ll royalties owing under each Master License Agreement [including the three Highland-Collectables sublicenses, *see* JA 198,] have been paid by Collectables directly to the licensor according to the provisions of each agreement." JA 199 (Plaintiffs' Response to Defendant's Statement of Undisputed Material Facts). At no point in their

appellate briefs do King and GML acknowledge, much less explain, this admission. Because the district court properly considered this admission in ruling on the motion for summary judgment, *see* D. Ct. Op. at 24; Fed. R. Civ. Pro. 56(c) (directing courts to consider any "admissions on file"), King and GML cannot tenably argue that Collectables did not pay all royalties owed under its license with Highland.

Even aside from this dispositive admission, it bears adding that King's and GML's evidentiary support for this claim is underwhelming. They initially attempt to support this claim through the White Report, but as shown the district court refused to rely on that document and King and GML have not explained why that was reversible error. They next claim that "[t]he record contains evidence" that the district court in *Thomas* "found 13,000 units sold," then conclude that the evidence "reflects that Collectables has not paid an adequate amount of royalties," App't Br. at 25, because Collectables has paid Highland only "a total of $3,719.76 for exploitation of two packages: 'The Shirelles: For Collectors Only' and 'For Lovers Only,'" JA 99. But they never explain why $3,719.76 is not "an adequate amount of royalties" for "13,000 units sold."

They next argue that while Collectables provided an affidavit stating it had paid all royalties owed under its sublicenses with Highland, "Collectables' records of royalty payments do not support [the affiant's] statements." App't Br. at 13 n.6. But in purporting to support this contention, King and GML point to a page in the record containing a document pertaining to products sold in connection with Collectables' agreement with Sehorn, not Highland. *See* JA 272.

Lastly, they argue that "the only proof in the record reflects that Collectables exceeded the scope of the Highland license." App't Rep. Br. at 11 n.5. But in support of this statement, they cite a curious collection of licensing materials, none of which demonstrate—or indeed even say—that Collectables failed to pay all royalties owed to Highland. *See* JA 336–43. In the final analysis, we are left with King's and GML's conclusory statements that Collectables underpaid Highland and an unexplained collection of record citations that do not support the point. Under these circumstances, the district court properly rejected the Highland unjust enrichment claim as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49 (1986); *Thaddeus-X v. Blatter*, 175 F.3d 378, 399–400 (6th Cir. 1999); *Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 171 F.3d 1065, 1068 (6th Cir. 1999).

## C.

King and GML finally claim that Collectables' agreement with Sehorn became invalid after November 21, 1997, when Sehorn lost his rights to use the Catalogue in the course of his bankruptcy proceeding. When Collectables continued to sell products in connection with the Sehorn license after this date, the theory goes, it derived a benefit from King and GML and should have paid royalties to them rather than continuing to pay royalties to Sehorn. While the parties agree that the Sehorn license became invalid after November 21, 1997, they also agree that Collectables did not know this fact and that it continued to pay all royalties that would otherwise have been due under the license to Sehorn. The question, then, is whether Tennessee unjust enrichment law requires

Collectables to pay these royalties a second time to King and GML. Like the district court, we do not think that it does.

Tennessee courts have long emphasized that "[t]he most significant requirement" of this claim is that any "benefit to the defendant be unjust." *Freeman Indus., LLC v. Eastman Chem. Co.*, — S.W.3d —, 2005 WL 2036209, at *10 (Tenn. 2005) (citing *Paschal's*, 407 S.W.2d at 155 and *Whitehaven*, 973 S.W.2d at 596). The alleged injustice of the current situation escapes us. For one, Collectables continued to hold up its end of a bargain that it had no reason to suspect had changed. It continued to pay Sehorn all royalties that the license required it to pay. For another, King and GML, in conspicuous contrast to Collectables, were intimately involved in the proceedings that led to the invalidation of Sehorn's rights. *See Thomas*, 104 F. Supp. 2d at 912 (citing *GML, Inc. v. Marshall E. Sehorn, et al.*, Case No. 3:88-0287 (M.D. Tenn. 1998), where King and GML sought a "declaratory judgment that Sehorn had no right to exploit the Springboard Masters and injunctive relief prohibiting Sehorn's licensees from continuing to exploit the Springboard Masters"); D. Ct. Op. at 21 (describing a settlement agreement between Sehorn and King and GML over rights to the Catalogue); JA 239 (King and GML brought the bankruptcy court's decision to the attention of the district court presiding over *Thomas*, 104 F. Supp. 2d 906). Yet King and GML have acknowledged that they did not take any steps to inform Collectables of their position that the royalties that Collectables continued to submit to Sehorn should in fact have gone to King and GML after November 27, 1997. As between the two sets of parties, King and GML stood in a far better position than Collectables to know about, and evaluate the consequences of, the bankruptcy court's

decision against Sehorn—and of course readily could have let Collectables know about this development.

Under Tennessee law, Collectables was unjustly enriched only if it accepted a benefit "under such circumstances that it would be inequitable" for it not to compensate King and GML. *Paschal's*, 407 S.W.2d at 155. Because no party has brought to our attention a principle of equity that requires a party who did not know about the termination of a license (Collectables) to initiate the redirection of royalty payments to the party that did have such knowledge (King and GML), we cannot accept King's and GML's argument that equity, justice or any other component of the unjust enrichment doctrine supports their position. On this record, the district court properly entered summary judgment in favor of Collectables on this claim as well.

III.

For these reasons, we affirm.