United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 19, 2006**

Charles R. Fulbruge III
Clerk

REVISED OCTOBER 24, 2006
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-41345
_____

IN THE MATTER OF: SUPREME BEEF PROCESSORS, INC.,

Debtor.

------------------------

STEPHEN ZAYLER, Trustee of the Estate of
Supreme Beef Processors, Inc.,

Appellant,

versus

DEPARTMENT OF AGRICULTURE; UNITED STATES OF AMERICA,

Appellees.

---

Appeal from the United States District Court
for the Eastern District of Texas
Docket No. 6:02-CV-570

---

Before JONES, Chief Judge, and JOLLY, HIGGINBOTHAM, DAVIS, SMITH, WIENER, BARKSDALE, GARZA, DeMOSS, BENAVIDES, STEWART, DENNIS, CLEMENT, PRADO, and OWEN, Circuit Judges.[*]

EDITH H. JONES, Chief Judge:[**]

In this bankruptcy case, the debtor, Supreme Beef Processors, Inc. ("Supreme Beef"), asserts that it may pursue tort claims against the United States Department of Agriculture ("USDA")

---

[*]     Judge King is recused and did not participate in the decision.

[**]     Judge Higginbotham and Judge Owen, writing separately, concur in the judgment only.

that would be barred by the federal government's sovereign immunity outside of bankruptcy. The district court dismissed Supreme Beef's claims, but a panel of this court held that permissive counterclaims against the Government may be used as a setoff pursuant to § 106(c) of the Bankruptcy Code, 11 U.S.C. § 106(c), which allegedly effects a waiver of the USDA's sovereign immunity. Upon reconsidering the case en banc, we reject the panel's interpretation of § 106(c) and AFFIRM the decision of the district court in its entirety.

## I.  Background

Supreme Beef was a Texas-based company in the business of processing, grinding and selling meat products. As a major domestic wholesale supplier of beef products, the company had several contracts with the USDA to support the National School Lunch Program.

The USDA is responsible for ensuring the safety of the nation's meat products, 21 U.S.C. § 608, and has delegated its inspection duties to the Food Safety and Inspection Service ("FSIS"). As a general matter, the USDA bears the cost of performing inspection services. It is, however, authorized to seek reimbursement for overtime work at individual plants, 21 U.S.C. § 695 and 7 U.S.C. § 2219(a), and it may collect fees for certification services. 7 U.S.C. § 1622(h).

2

In 1996, FSIS issued the Pathogen Reduction, Hazard Analysis and Critical Control Point Systems ("HACCP") rule, 9 C.F.R. § 417, which requires meat processors to develop and implement preventive controls to ensure product safety. The FSIS maintains the power to verify whether plants' performance plans are eliminating common pathogens such as E. coli and Salmonella.

Two years later, Supreme Beef implemented its first HACCP pathogen control plan. Unfortunately, the company failed a series of tests administered by the FSIS over a period of months.

Still unable to demonstrate adequate HACCP control by October 1999, Supreme Beef filed a lawsuit on the day that the USDA had set to suspend inspection activities at its plant. Removal of USDA inspectors would be a fatal blow to the company, as it is illegal to sell uninspected beef. 21 U.S.C. § 606. The district court granted a temporary restraining order and later upheld Supreme Beef's contention that because the FSIS testing system was "not solely – or even substantially" related to the plant's sanitary conditions, it fell outside the agency's regulatory authority. Supreme Beef Processors, Inc. v. U.S. Dep't of Agric., 113 F. Supp. 2d 1048, 1053 (N.D. Tex. 2000), aff'd, 275 F.3d 432 (5th Cir. 2001). The decision was a Pyrrhic victory, however, as the court refused to compel USDA to perform the National School Lunch contracts. Having lost its government contracts and many other customers, Supreme Beef was forced to seek Chapter 11

bankruptcy in September 2000. Its case was subsequently converted to Chapter 7.

Adding insult to the company's injury, the USDA filed various proofs of claim totaling $32,753 for pre-petition meat certification services and overtime inspection work. The trustee filed an adversary proceeding against the Government in bankruptcy court seeking damages for USDA's unauthorized regulatory activity. The reference was withdrawn, and the case proceeded in federal district court. The trustee asserted five claims against the USDA under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680.[1] The USDA moved to dismiss Supreme Beef's claims as being barred facially by federal sovereign immunity. See FED. R. CIV. P. 12(b)(1) and 12(b)(6). Citing 11 U.S.C. §§ 106(b) and (c), Supreme Beef countered that USDA had waived its immunity by filing bankruptcy proofs of claim. The district court sided with the USDA, and Supreme Beef appealed. A panel of this court reversed the trial court's judgment[2] and held that 11 U.S.C. § 106(c) waived USDA's sovereign immunity and authorized a setoff of Supreme Beef's permissive counterclaims. This court ordered rehearing en banc.

## II. Discussion

---

[1] Supreme Beef's complaint alleged (1) tortious interference with business relations; (2) tortious interference with existing contracts; (3) slander; (4) business disparagement; and (5) breach of duty to perform proper inspection.

[2] While its ruling on § 106(c) resulted in a reversal of the district court's judgment, the panel upheld the trial court's conclusion that § 106(b) did not apply because Supreme Beef's claims against USDA are not compulsory counterclaims. See 11 U.S.C. § 106(b) and infra note 6.

4

This court reviews de novo a district court's dismissal pursuant to FED. R. CIV. P. 12(b)(1) or 12(b)(6). LeClerc v. Webb, 419 F.3d 405, 413 (5th Cir. 2005). A claim may not be dismissed unless it appears certain that the plaintiff cannot prove any set of facts that would entitle him to legal relief. Benton v. United States, 960 F.2d 19, 21 (5th Cir. 1992).

The issue in this case is whether Supreme Beef stated a viable claim for tort recovery against the USDA premised solely on § 106(c) of the Bankruptcy Code, which provides:

> (c) Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

11 U.S.C. § 106(c).

Our analysis begins with the legal claim that Supreme Beef may not pursue: an FTCA claim. The Constitution contemplates that, except as authorized by Congress, the federal government and its agencies are immune from suit. Hercules, Inc. v. United States, 516 U.S. 417, 422, 116 S. Ct. 981, 985 (1996). Two Constitutional provisions support this immunity. The Appropriations Clause states that no money "shall be drawn from the Treasury, but in Consequence of Appropriations made by Law". U.S. CONST. art. I, § 9, cl. 7. Consequently, any "payment of money from the Treasury must be authorized" by Congress. Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 424, 110 S. Ct. 2465, 2472 (1990). Similarly, the Property Clause states that, "[t]he

5

Congress shall have power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States." U.S. CONST. art. IV, § 3, cl. 2. "Congress has the absolute right to prescribe" the manner in which its property is transferred. Gibson v. Chouteau, 80 U.S. 92, 99 (1872).

Absent an express waiver of federal immunity by Congress, the USDA cannot be sued by Supreme Beef. Congress provided, in the FTCA, an exclusive vehicle for the assertion of tort claims for damages against the federal government. See 28 U.S.C. §§ 2679(a)-(b)(1). The FTCA allows a plaintiff to pursue tort actions against the federal government, and it holds the government liable as if it were a defendant in state court, subject to strict limitations. Relevant here are two substantive limitations that constitute a sine qua non for a plaintiff's recovery.[3] Codified at 28 U.S.C. § 2680, these exceptions deprive courts of subject matter jurisdiction and cannot be waived. Hayes v. United States, 899 F.2d 438, 450-51 (5th Cir. 1990). Claims based upon "a discretionary function or duty" of a federal agency cannot be brought against the United States. 28 U.S.C. § 2680(a). Because

---

[3] The FTCA contains two administrative prerequisites to suit that were arguably also not complied with and could bar Supreme Beef's suit. These are the requirements for exhaustion of administrative remedies and a two-year limitation on filing suit following exhaustion. See 28 U.S.C. §§ 2401(b), 2675(a). The district court held that § 106(c) obviated the administrative exhaustion roadblock for Supreme Beef. See, e.g., Ashbrook v. Block, 917 F.2d 918, 923 (6th Cir. 1990). We need not consider that ruling here, nor has the two-year limitation been raised.

6

USDA's implementation of a Salmonella performance standard involved discretionary acts, the FTCA affords no recovery for claims predicated on such actions. Additionally, § 2680(h) excludes recovery for claims against the United States for "libel, slander, misrepresentation, deceit, or interference with contract rights." Id. § 2680(h). Four of the company's causes of action also ran afoul of this limitation. The district court correctly held, and Supreme Beef does not dispute on appeal, that for these reasons, it could not have asserted FTCA claims against the USDA prior to filing bankruptcy.[4]

In lieu of the FTCA, Supreme Beef contends that the Bankruptcy Code effected an independent waiver of federal sovereign immunity, allowing its offset of permissive counterclaims against USDA's proof of claim. While the determinative provision for Supreme Beef is 11 U.S.C. § 106(c),[5] that provision is part of a Bankruptcy Code section that deals more completely with questions

---

[4]    The FTCA provides the sole basis of recovery for tort claims against the United States. That Congress chose to incorporate standards for federal conduct that mirror applicable state standards of liability does not diminish this exclusivity. In fact, the exclusivity is reinforced by substantive limits on that incorporation, which are embodied, inter alia, in the discretionary function and intentional tort exceptions to the FTCA.

[5]    Supreme Beef continues to contend that its claims are also permitted under § 106(b), which authorizes recovery of compulsory counterclaims against a governmental unit that has filed a proof of claim in the bankruptcy case. The discussion hereinafter of "property of the estate" is as relevant to § 106(b) as to § 106(c). We also find dispositive, as did the panel, the district court's ruling that because USDA's claims for overtime and certification services covered entirely different periods of time than the Salmonella HACCP tests at the company plant, Supreme Beef's claims based on the latter events do not arise out of the same transactions or occurrences as those that underlie USDA's claims. See Supreme Beef,391 F.3d 629, 633–35 (2004).

7

of sovereign immunity.[6]  In searching for the best interpretation of § 106(c), it is a "cardinal rule that a statute is to be read as a whole," in order not to render portions of it inconsistent or devoid of meaning.  Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler, 537 U.S. 371, 385 n.7, 123 S. Ct. 1017, 1025 (2003) (internal quotation omitted).  Another guiding principle is that waivers of sovereign immunity should be narrowly construed in favor of the United States.  United States v. Nordic Vill. Inc., 503 U.S. 30, 34-35, 112 S. Ct. 1011, 1015 (1992).

Bankruptcy Code § 106 currently consists of three subsections, which provide in pertinent part:

> (a)  Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
>
> > (1)  Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title. . . .
>
> . . . .
>
> > (5)  Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this

---

[6]      The Supreme Court's recent decision in Cent. Va. Cmty. Coll. v. Katz, 126 S. Ct. 990 (2006), declared that states waived their sovereign immunity in bankruptcy "in the usual case" under the plan of the Constitutional Convention. 126 S. Ct. at 1000.  Regardless what effect Katz has with respect to some aspects of state or local governmental units' encounters with bankruptcy, Katz had no effect on this case involving federal sovereign immunity.

> title, the Federal Rules of Bankruptcy
> Procedure, or nonbankruptcy law.
>
> (b)  A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.
>
> (c)  Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

11 U.S.C. § 106 (a)-(c).

When the modern Bankruptcy Code was enacted in 1978, Congress attempted to create a level playing field between sovereign entities and other participants in bankruptcy court by abrogating sovereign immunity.  Subsections 106(b) and (c) have been redesignated, but are substantively unchanged since the Code's inception except for the addition of the "notwithstanding" clause to § 106(c) in 1994.  The current structure of the provisions is a response to Supreme Court decisions that required express declarations of congressional intent to abrogate sovereign immunity in order to satisfy to the Eleventh Amendment and federal immunity law.  See, e.g., Hoffman v. Conn. Dep't of Income Maint., 492 U.S. 96, 101-02, 109 S. Ct. 2818, 2823 (1989); Nordic Vill., supra, 503 U.S. at 34-35, 112 S. Ct. at 1015.  Section 106(a)(1) creates jurisdiction in bankruptcy courts "[n]otwithstanding an assertion of sovereign immunity" to hear certain types of administrative

9

struggles in which governmental units may become embroiled in a bankruptcy case. The list of Code sections identifies the types of proceedings in which governmental units may be sued, e.g., preference and fraudulent transfer litigation (§§ 547-48), and assessment of administrative expenses (§§ 502-03). Not included among these sections is § 541 of the Code, which defines "property of the estate". Section 106 (a)(5) provides that no substantive cause of action is created against governmental units beyond what exists in bankruptcy law or in applicable non-bankruptcy law. Sections 106(a)(3) and (4) regulate the amounts and types of recovery in bankruptcy proceedings against governmental units.[7] For this reason, and insofar as § 106(a)(5) creates no cause of action apart from applicable non-bankruptcy law, § 106(a) clearly distinguishes between sovereign immunity from suit and immunity from liability. See 2 COLLIER ON BANKRUPTCY ¶106.05-.07,(15th ed. rev. 2004).

Sections 106(b) and (c) are consistent with Section 106(a); they vest the bankruptcy courts with jurisdiction to hear certain claims but do not create substantive non-bankruptcy law that will govern a claim. These provisions have been described by the Supreme Court as "plainly waiving" sovereign immunity with respect to monetary relief in two settings: compulsory counter-

---

[7] Sections 106(a)(3) and (4) provide the bankruptcy court the same capacity as a district court to award reasonable monetary damages, exclusive of punitive damages, for costs and fees pursuant to 28 U.S.C. § 2412(d)(2)(A).

claims to governmental claims (current § 106(b)), and permissive counterclaims to governmental claims capped by a setoff limitation (current § 106(c)).  Nordic Vill., 503 U.S. at 34, 112 S. Ct. at 1015.[8]  Importantly, in Nordic Village, the Court added that Congress's grant of jurisdiction to entertain such claims is wholly distinct from the abrogation of all defenses to a claim.  Id. at 38, 112 S. Ct. at 1017.  Put otherwise, "it cannot be assumed that a claimant has a cause of action for damages against a government agency merely because there has been a waiver of sovereign immunity."  Cicippio-Puleo v. Islamic Republic of Iran, 353 F.3d 1024, 1033 (D.C. Cir. 2004) (citing FDIC v. Meyer, 510 U.S. 471, 483-84, 114 S. Ct. 996 (1994)).  In Meyer, the Court stated that "[t]he first inquiry is whether there has been a waiver of sovereign immunity.  If there has been such a waiver . . . the second inquiry . . . is whether the source of substantive law upon which the claimant relies provides an avenue for relief."  Meyer, 510 U.S. at 484, 114 S. Ct. 1004.  See also, U.S. Postal Serv. v. Flamingo Indus. (USA) Ltd., 540 U.S. 736, 744, 124 S. Ct. 1321 (2004)(a federal agency's amenability to suit "does not result in liability if the substantive law in question is not intended to reach the federal entity.").  Sections 106(b) and (c), therefore, permit the assertion of counterclaims or offsets, but they do not

---

    [8]     At the time Nordic Village was decided, subsections (b) and (c) were designated as §§ 106 (a) and (b), respectively.

11

determine the law that substantively governs claims against the governmental units.

The law that governs counterclaims or offset claims is applicable state or federal law. This is expressed in both provisions by the requirement that counterclaims or offsets against the governmental units be "property of the estate."[9] The Bankruptcy Code defines "property of the estate" as including "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Supreme Court has emphasized that bankruptcy law is not itself a source of property rights. It functions to adjust pre-existing property rights as defined by extrinsic state or federal law. <u>Butner v. United States</u>, 440 U.S. 48, 54-55, 99 S. Ct. 914, 917-18 (1979); <u>see also</u> <u>In re Pinetree, Ltd.</u>, 876 F. 2d 34, 36 (5th Cir. 1989). Because counterclaims or offset claims against governmental entities must be "property of the estate," they are not freestanding and divorced from the substantive limitations that would be imposed outside of bankruptcy. The FTCA, as noted, is the exclusive vehicle for claims that Supreme Beef could have maintained against USDA outside of bankruptcy. Literal application of § 106(c) ultimately leads Supreme Beef to a dead end. The

_____

[9] As <u>Collier</u> recognizes: "Whether there is a valid and enforceable claim or obligation in existence to be used as a setoff depends upon the applicable state or federal substantive law and Sections 541, 1207 and 1306 of the Bankruptcy Code." 2 COLLIER ON BANKRUPTCY ¶ 106.07[1] (15th ed. rev. 2004)(the latter in regard to § 106(b)).

12

company may not offset any permissive counterclaim without an underlying claim that was "property of the estate" at the date of bankruptcy.

Supreme Beef takes issue with this interpretation of § 106(c) on several grounds. First, it contends that its claims are "property of the estate" because they "exist" under state law, notwithstanding the FTCA's discretionary function and intentional tort exceptions. That state law defines certain conduct as tortious, however, simply does not mean that a private person may sue the U.S. Government solely under the state's law. The federal government enjoys complete sovereign immunity except as it has consented to be sued and consented to submit to liability. Supreme Beef's implication that FTCA's incorporation of state tort law can be divorced from that statute's express limits on liability, e.g., the discretionary function and intentional tort exceptions, violates the rule requiring harmonious interpretation of a statute as a whole.

Supreme Beef also misplaces reliance on this court's recent en banc decision interpreting the temporal limits on the definition of "property of the estate." Burgess v. Sykes (In re Burgess), 438 F.3d 493 (5th Cir. 2006). Both the majority and dissenting opinions in Burgess considered cases in which there was no dispute that the debtor had obtained a cognizable legal claim against the federal government, a claim embodied in legislation; the point of contention solely concerned whether the claim arose

13

before or after bankruptcy. In this case, the question is whether Supreme Beef has any claim apart from the FTCA.

Supreme Beef next contends that because § 106(c) allows a trustee to assert permissive counterclaims "notwithstanding any assertion of sovereign immunity" by a governmental unit, this effects a waiver of substantive sovereign immunity. We disagree. The clause is designed to recognize the different procedural postures in which §§ 106(b) and (c) claims arise. Under § 106(b), a governmental unit will have filed a proof of claim against the debtor, e.g., for back taxes, and the unit is then "deemed to have waived" immunity for any compulsory counterclaim the debtor can assert that is also "property of the estate." In the § 106(c) context, however, it is not necessary that the governmental unit first file a claim, so no "deemed waiver" is appropriate. But, where a separate but related governmental entity has filed a claim (e.g., two different state agencies),[10] the debtor's claim for a capped offset may be maintained in bankruptcy court "notwith-standing any assertion of sovereign immunity." This language waives immunity from suit, not from liability.

If "notwithstanding any assertion of sovereign immunity" in § 106(c) means any more than a recognition of the procedural posture of the waiver, i.e., if it waives immunity from liability,

---

[10]    See, e.g., In re Charter Oak Associates, 361 F.3d 760, 770-72 (2d Cir. 2004), upholding permissive counterclaim against one state agency after another agency filed proof of claim).

14

then this would render the "property of the estate" language in § 106(c) superfluous as regards claims against a governmental unit. Further, "property of the estate" would have different meanings in §§ 106(b)and(c), functioning still as a limit on a governmental unit's liability in the former provision but not, according to Supreme Beef's interpretation, in the latter provision. Finally, if § 106(c) — uniquely among its companion provisions §§ 106(a) and (b), and contrary to the FTCA — creates causes of action against governmental units untethered from existing extrinsic law, it impermissibly creates "property" of the debtor that the debtor did not have prebankruptcy. Supreme Beef acknowledges it could not have sued USDA prebankruptcy under the FTCA. The Bankruptcy Code does not grant Supreme Beef a superior right against the government postbankruptcy.

The argument may be made that because § 106(c) involves capped setoff claims, such claims may not result in a judgment for money damages against a governmental unit and thus do not implicate sovereign immunity. This interpretation, however, drains any meaning from the description of the setoff as "property of the estate." It also renders questionable the "notwithstanding" clause, which would be unnecessary if the fact of a capped offset dissociates the debtor's claim from impinging on sovereign immunity.

Finally, while there appear to be no decisions interpreting § 106(c) as a freestanding waiver of substantive

15

sovereign immunity, that proposition has been rejected by the Tenth Circuit. See Franklin Sav. Corp. v. FDIC, 385 F.3d 1279 (10th Cir. 2004). There, the plaintiff attempted to circumvent its inability to state a timely claim under the FTCA by relying on § 106. The court rejected the plaintiff's contention that "Bankruptcy Code § 106 constitutes a complete waiver of sovereign immunity separate and apart from the FTCA's waiver of immunity, and that this waiver permits tort claims against the United States which would otherwise not be permitted under the discretionary function exception of FTCA § 2680(a)."[11] Id. at 1285. Acknowledging that the FTCA is the exclusive remedy for tort claims against the United States, the court held that "Bankruptcy Code § 106 does not provide a substantive or independent basis for asserting a claim against the government." Id. at 1286 (quoting § 106(a)(5)). We see no reason to deviate from the decision and reasoning of Franklin.

### III. Conclusion

The foregoing holistic interpretation of § 106 means that Supreme Beef has no claim for offset against the federal government unless nonbankruptcy law gave it a claim that was "property of the estate" as of the date of bankruptcy. Any such claim, however, was coterminous with, and doomed under, the FTCA. The construction of

---

[11] Franklin distinguished the decisions in Anderson v. FDIC, 918 F. 2d 1139 (4th Cir. 1990), and Ashbrook v. Block, 917 F. 2d 918 (6th Cir. 1990), which held that FTCA's procedural exhaustion requirement does not apply in a § 106 setting. Franklin's distinction between disallowing presentment of a claim in the first instance and disallowing an untimely filed claim sufficiently treats this intercircuit discrepancy. Franklin, 385 F. 3d at 1290-91.

16

§ 106(c) that Supreme Beef advocates would allow it to assert a prebankruptcy claim against USDA that it could not assert outside of bankruptcy. This result flies against the fundamental principle that bankruptcy law is intended to divide up a debtor's assets according to the property rights prescribed by applicable nonbankruptcy law. <u>Butner</u>, <u>supra</u>, 440 U.S. at 54-55, 99 S. Ct. at 917-18.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

PATRICK E. HIGGINBOTHAM, Circuit Judge, concurring:

This is not an easy case, and I offer no words to make it so. Rather, in my view, the best footing for resolution lies with its clouding uncertainty — as I will explain. At its heart the dispute is whether the FTCA selectively incorporates state tort law, extinguishing the unincorporated husk, or whether the FTCA merely waives sovereign immunity, leaving a remedy under certain conditions. To my eye, resolving that question largely decides the case. This is true because any claim brought under 106(c) must have been "property of the estate"; that is, the claim must have existed *pre-petition*. There is the traditional view, sovereign immunity destroys the remedy, not the cause of action.[1] There is the response that the revival of previously barred state tort claims would create "property of the estate" that never existed outside of bankruptcy.

While this response arguably is question begging, it is not demonstrably wrong. Indeed, its main hurdle is the text of section 106(c) itself, which provides for an offset against the government "notwithstanding any assertion of sovereign immunity." The argument must explain what (other than a clear waiver of immunity) these words could possibly mean. The proffered solution is more clever than grounded and mirrors our approach in *Meyers ex rel.*

---

[1]     *See, e.g., Pennhurst*, 465 U.S. at 112 (noting that the "doctrine of sovereign immunity and the requirement that a plaintiff state a cause of action" should not be "confused.").

*Benzing v. Texas*, which held that the State of Texas waived only its immunity from suit, not its immunity from liability, when it removed a case from state to federal court.[2]  Likewise, the argument continues, the clear waiver expressed in section 106(c) is a waiver only of "forum immunity," not of substantive immunity.

This solution has conceptual difficulties.  As *Meyers ex rel. Benzing* recognized, other circuits have held that "the federal government's sovereign immunity, unlike that of the states, is a defense to liability but *not an immunity from suit*."[3]  The two Constitutional Clauses in which the argument locates federal sovereign immunity, the Appropriations Clause and the Property Clause, support only immunity from liability.

Another, perhaps the best possible source of the federal government's immunity *from suit* in its *own courts* is Article III's grant to Congress of the power to control our jurisdiction.  Early references to federal sovereign immunity agree with this reading, locating immunity in the silence of the Judiciary Act, not the text of the Constitution.[4]

---

[2]    410 F.3d 236 (5th Cir. 2005).

[3]    Only the Ninth Circuit has squarely held this.  The Seventh Circuit's holding is more nuanced than *Meyers* suggests.  In certain sue and be sued cases, the Supreme Court has suggested that federal immunity is an immunity from suit. See, e.g., *F.D.I.C. v. Meyer*, 510 U.S. 471, 483 (1994).

[4]    *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 411-12 (1821) ("The universally received opinion is, that no suit can be commenced or prosecuted against the United States; that the judiciary act does not authorize such suits.").

Whatever the answer to this contested question, neither the Supreme Court nor the Bankruptcy Code "clearly distinguishes between [federal] sovereign immunity from suit and immunity from liability." Nor does Collier on Bankruptcy support this proposition, as the opinion suggests.[5] So if we are to rest decision on this useful conceptual dichotomy, we should name its source.

Even assuming away this conceptual problem and accepting two-part immunity as law, we are yet at sea. If Congress merely wanted to provide jurisdiction over FTCA claims to the Bankruptcy courts (waive forum immunity), it chose a most subtle means to make that simple purpose manifest. All other provisions waiving only forum immunity clearly sound in venue and jurisdiction.[6] And the reality that if Congress intended this result, it likely would have amended 28 U.S.C. 1334 (the bankruptcy jurisdictional statute), not the substantive provisions of 11 U.S.C. 106, is troubling. Add to the mix another reality: legislative history is no friend to the argument that section 106 anticipates only that the same result

---

[5] If anything, Colliers supports the dissent, noting in section 106.06[3], "to the extent that judgment is entered under 106(b), the limitations on punitive damages of 106(a) do not apply." This suggests that punitive damages might be available under 106(b), a suggestion which rejects the incorporation of the FTCA into 106(b) and (c).

[6] *See, e.g.*, 28 U.S.C. § 1346 ("the district courts . . . shall have exclusive *jurisdiction* of civil actions on claims against the United States . . . ."); 28 U.S.C.A. § 1605(a) ("A foreign state shall not be immune *from the jurisdiction* of courts of the United States or of the States.").

prevail within Bankruptcy as would have prevailed outside of Bankruptcy. The Senate Report notes:

> Section 106 provides for a limited waiver of sovereign immunity in Bankruptcy cases. . . . The policy followed here is designed to achieve approximately the same result that would prevail outside of bankruptcy. . . . There is, however, a limited change from the result that would prevail in the absence of bankruptcy; the change is two-fold and is within Congress' power vis-a-vis both the federal government and the states. First, the filing of a proof of claim against the estate by a governmental unit is a waiver by that governmental unit of sovereign immunity with respect to compulsory counterclaims, as defined in the federal rules of civil procedure . . . . Second, the estate may offset against the allowed claim of a governmental unit, up to the amount of the governmental unit's claim, any claim that the debtor, and thus the estate, has against the governmental unit.

This Senate report suggests that Bankruptcy does indeed provide a cause of action for recoupment or offset that would not have been otherwise available.

So it is that the dissent's argument that the waiver in section 106 is unequivocal has purchase, but only until that waiver

21

is viewed within the statutory matrix.  For although, in the interest of fairness, section 106 plainly exposes the government to suit when it files a claim in Bankruptcy, it is another thing to say that section 106 upsets the FTCA's detailed statutory provisions which expressly carve out a withholding of sovereignty. It would be surprising if Congress intended to silently outflank such an important remedial statute, exposing government officials to suit for their every exercise of discretion.  Immunity for the exercise of discretion has been viewed as essential to the administration of government policy: a view that sustains the judicially crafted federal common law of immunity for its employees — from qualified to absolute.

Compare this impression of the statutory matrix to the Court's evolving section 1983 doctrine.  In *Sea Clammers*, the Court held that the "comprehensive enforcement mechanisms" found in relevant environmental statutes *implied* a Congressional intent to preclude a remedy under the more general provisions of section 1983.[7]  Such might be the case here.  Congress might have intended that the waiver in section 106 apply only generically, to claims not covered by some other and relatively explicit statutory scheme.  Or, as the

_____

[7]  *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 20-21 (1981).

22

majority urges, Congress might have intended that the waiver provide only a forum.[8]  Nor is that the end of deep water.

There is force in the argument that,[9] because all offsets are capped at *zero recovery* for the government, immunity from liability does not attach.  No affirmative judgment against the public fisc can issue under section 106(c).  It's true, of course, that practically speaking a penny saved by the debtor is a penny earned.  But if practical effect were the standard, then injunctions would also implicate the public fisc.

But this zero-recovery argument ultimately fails.  It does not apply to section 106(b), and would create an odd statutory scheme under which a defendant could bring any state tort claim as an offset under section 106(c), but could bring only FTCA actions in recoupment under 106(b).  That scheme would sorely tax the text of 106(b) and (c), and, as I have already pointed out, frustrates the larger congressional scheme.

This said, all the writings collectively make plain that ambiguity remains in the waiver of immunity.  A Congressional waiver of immunity must be unequivocal.[10]  By the clear-statement rule, resort to legislative history, which we turn to with textual

---

[8]     *See Chrome Plate, Inc. v. District Director of Internal Revenue*, 442 F.Supp. 1023 (a pre-waiver case that forced a bankruptcy trustee to bring his valid Tucker Act counterclaim in the Court of Claims).

[9]     Recall that Congress has waived sovereign immunity from actions in federal courts (not state courts) seeking relief other that money damages. 5 U.S.C. § 702.

[10]     *Lane v. Pena*, 518 U.S. 187 (1996).

ambiguity, is foreclosed, even if it offered answers, which it does not. And it is the clear statement rule that closes this case. While the argument of the dissent is strong, the clear statement rule demands that it do more. The majority, concurring, and dissenting opinions search for definitive readings of the statutory matrix and in the effort offer creative solutions that, while not fully successful, expose ambiguity. Other courts, in their search for concinnity, have done the same.[11] And ambiguity is resolved in favor of the sovereign. Either way, and with all respect, the writings overstate their case, and move with more certainty than is warranted. Rather than creatively stretching for non-existent certainty, I would accept the uncertainty, apply the clear statement rule, and reach the same conclusion as the majority. To my eyes, my colleagues move beyond interstitial interpretation of this statutory array to the making of policy choices that ought be left to Congress.

---

[11] *See, e.g.*, *Ashbrook v. Block*, 917 F.2d 918, 924 (6th Cir. 1990) (holding that section 106 repealed by implication only the FTCA's exhaustion requirement); *In re TPI Intern. Airways, Inc.*, 141 B.R. 512, 518 (Bkrtcy.S.D.Ga.,1992) (holding that section 106 repeals all FTCA protections *except for* the discretionary function exception); *Anderson v. Federal Deposit Ins. Corp.*, 918 F.2d 1139, 1144 (4th Cir. 1990) (concluding that section 106 repealed all FTCA protections).

DENNIS, Circuit Judge, concurring:

I join the majority opinion and write separately only to assign additional reasons for concluding that the state-law tort claims that Supreme Beef attempts to bring in this case are not "property of the estate" that can be asserted as a setoff under section 106(c) of the Bankruptcy Code. In my view, the resolution of this question, which turns on the proper characterization of the Federal Tort Claims Act (the "FTCA"), is critical to the result in this case. Because the FTCA is something more than a mere limited waiver of the federal government's sovereign immunity, I agree with the majority that the waiver of sovereign immunity contained in section 106(c) does not permit a debtor to assert in bankruptcy state-law tort claims that would otherwise be barred by the "substantive" exceptions to the FTCA. *See* 28 U.S.C. § 2680.

Liability may be imposed upon the United States only if two requirements are met: (1) there must be a waiver of sovereign immunity; and (2) there must be a source of

25

substantive law that provides a claim for relief. *See FDIC v. Meyer*, 510 U.S. 471, 483-84 (1994). The FTCA fulfills both of those requirements, as it waives the federal government's immunity from suit and provides that the United States shall be liable for the torts of its employees under certain circumstances. *See* 28 U.S.C. §§ 1346(b)(1), 2674; *Richards v. United States*, 369 U.S. 1, 6 (1962) ("The Tort Claims Act was designed primarily to remove the sovereign immunity of the United States from suits in tort and, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances."). For the most part, the FTCA pegs the scope of governmental tort liability to the content of applicable state law, but Congress undoubtedly possesses the authority to displace state law and place federal limits and conditions on the federal government's tort liability, *see Richards*, 369 U.S. at 7, 14, and it has exercised that authority at various places in the FTCA. For example, the FTCA establishes a federal statute of limitations that applies irrespective of the relevant state limitations period, *see*

26

28 U.S.C. § 2401(b); it sets limitations on the remedies available against the United States, *see id.* § 2674; it provides that it is the exclusive remedy for tort recovery against the United States, *see id.* § 2679(b)(1); and, most importantly for this case, it categorically excludes liability for many types of claims, including claims based on a discretionary governmental function, claims arising in a foreign country, and claims "arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." *Id.* § 2680. Moreover, in developing the jurisprudence under the FTCA, the federal courts have used a mixture of federal, state and hybrid concepts. *See Devlin v. United States*, 352 F.3d 525, 532-34 (2d Cir. 2003) (discussing "hybrid," "purely federal" and "purely state-law-derived" approaches to defining different FTCA statutory terms).

While the rules of decision in suits brought under the FTCA are derived principally from the law of the states, a substantial number of purely federal and hybrid precepts

are also integral to the body of law known as the FTCA. Consequently, the FTCA claim for relief, which is subject to all of the above-described federal principles, limitations and more, is not exclusively a state-law claim in any realistic sense. Similarly, where a party is prevented from recovering from the United States by, for example, the FTCA's discretionary function exception, he does not possess a state-law cause of action that is simply barred by the United States' sovereign immunity; rather, his claim is barred, or effectively preempted, by a substantive limitation imposed by federal law. Thus, although section 106(c) of the Bankruptcy Code contains a waiver of sovereign immunity, that section cannot be read to dispense with the substantive principles and limitations that the FTCA imposes on the liability of the United States. To hold otherwise would require us to construe section 106(c) as not only waiving sovereign immunity, but also altering the essential nature of tort claims against the United States and significantly expanding the substantive liability of the federal government for tort claims asserted in a bankruptcy

28

proceeding. Congress presumably has the authority to enact such sweeping substantive changes, but the current section 106, which speaks only in terms of sovereign immunity and expressly disclaims the creation of any "substantive claim for relief or cause of action," 11 U.S.C. § 106(a)(5), does not do so. Accordingly, I join the majority's opinion.

PRISCILLA R. OWEN, Circuit Judge, concurring:

I join the majority's judgment. In my view, section 106(c)[1] does not unambiguously abrogate the federal government's sovereign immunity retained by the Federal Tort Claims Act.[2]

Section 106(c) provides: "Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate."[3] The "[n]otwithstanding" phrase can plausibly be read as merely providing a forum in bankruptcy courts for claims against the federal government that would have been cognizable in another venue. This construction would not override the express reservation of sovereign immunity in the Federal Tort Claims Act for a lengthy list of particular claims.[4] Nor would it subject the federal government to liability under state common law or myriad state and federal statutes as a "person" or entity without sovereign immunity. But a plausible argument can also be mounted, as the dissent has done, that the phrase

---

[1]    11 U.S.C. § 106(c) (2004).

[2]    28 U.S.C. § 2680 (1994 & Supp. 2006).

[3]    11 U.S.C. § 106(c) (2004).

[4]    28 U.S.C. § 2680 (1994 & Supp. 2006).

30

"[n]otwithstanding any assertion of sovereign immunity" means that all sovereign immunity is swept aside in its entirety, and therefore all state and federal causes of action that would be viable against a private entity are viable against the federal government.

The Supreme Court has repeatedly held that "[w]aivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed,"[5] and "the Government's consent to be sued must be construed strictly in favor of the sovereign."[6] The Supreme Court has held that sections 106(b) and 106(c), when they were, respectively, sections 106(a) and 106(b),[7] "meet this 'unequivocal expression' requirement with respect to monetary liability."[8] The Court said in this regard,

> Addressing "claim[s]," which the Code defines as "right[s] to payment," § 101(4)(A), they plainly waive sovereign immunity with regard to monetary relief in two settings: compulsory counterclaims to governmental claims, § 106(a); and permissive counterclaims to governmental claims capped by a setoff limitation, § 106(b). Next to these models of clarity stands

---

[5]     *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990) (quoting *United States v. Mitchell*, 445 U.S. 535, 538 (1980), and *United States v. King*, 395 U.S. 1, 4 (1969))) (internal quotation marks omitted).

[6]     *Id*. at 34 (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983)) (internal quotation marks and citation omitted).

[7]     11 U.S.C. § 106(a), (b) (1978) (amended 1994).

[8]     *Nordic Village*, 503 U.S. at 34.

31

[former] subsection (c).[9]  Though it, too, waives sovereign immunity, it fails to establish unambiguously that the waiver extends to monetary claims.  It is susceptible of at least two interpretations that do *not* authorize monetary relief.[10]

I submit that while former sections 106(a) and 106(b), now sections 106(b) and 106(c), clearly waive sovereign immunity with respect to monetary liability, they do not unequivocally abrogate sovereign immunity to the extent that they breathe life into causes of action against the federal government that would not otherwise exist.  The Supreme Court was not presented with this question in *Nordic Village*, and its statement that the language in sections 106(b) and 106(c) are an "'unequivocal expression' . . . with respect to monetary liability" cannot be stretched to encompass the issue before us today.

Even when Congress has used waiver language that "should be given a liberal—that is to say, expansive—construction," such as

---

[9]    At the time of the *Nordic* decision, 11 U.S.C. § 106(c) (1978) provided:

> (c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—
>     (1)  a provision of this title that contains 'creditor', 'entity', or 'governmental unit' applies to governmental units; and
>     (2)  a determination by the court of an issue arising under such a provision binds governmental units.

[10]    *Nordic Village*, 503 U.S. at 34.

a sue-and-be-sued provision,[11] "the interpretation of the waiver statute was just the initial step in a two-part inquiry."[12]  In *United States Postal Service v. Flamingo Industries (USA) Ltd.*,[13] the Supreme Court discussed the analysis employed in an earlier case, *FDIC v. Meyer*:[14]  "[E]ven though sovereign immunity had been waived, there was the further, separate question whether the agency was subject to the substantive liability recognized in *Bivens*."[15]  In *Flamingo Industries*, the question was whether the Postal Service could be liable under the Sherman Act based on the sue-and-be-sued provision in the Postal Reorganization Act of 1970.[16]  The Supreme Court explained, "We ask first whether there is a waiver of sovereign immunity for actions against the Postal Service.  If there is, we ask the second question, which is whether the substantive prohibitions of the Sherman Act apply to an independent establishment of the Executive Branch of the

---

[11]  *United States Postal Serv. v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736, 741 (2004).

[12]  *Id.* at 743.

[13]  *Id.*

[14]  510 U.S. 471 (1994).

[15]  *Flamingo Indus.*, 540 U.S. at 743 (referring to a so-called "*Bivens* action" based on *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)).

[16]  *Id.* at 743-44 (construing 39 U.S.C. § 401 (1980)).

United States."[17]   The Supreme Court criticized the court of appeals because the court of appeals "found that the Postal Service's immunity from suit [was] waived to the extent provided by the statutory sue-and-be-sued clause" and, in doing so, "conflated the two steps[, which] resulted in an erroneous conclusion."[18]   The Supreme Court explained that the substantive law on which a claim is based must be consulted to determine if it was intended to reach the federal entity:

> While Congress waived the immunity of the Postal Service, Congress did not strip it of its governmental status.  The distinction is important.  An absence of immunity does not result in liability if the substantive law in question is not intended to reach the federal entity.  So we proceed to *Meyer's* second step to determine if the substantive antitrust liability defined by the statute extends to the Postal Service.  Under *Meyer's* second step, we must look to the statute.[19]

The "[n]otwithstanding any assertion of sovereign immunity by a governmental unit" phrase in section 106(c) does not clearly strip the federal government of its governmental status as distinguished from immunity.  It would seem that Congress would more plainly state its intention to override the Federal Tort Claims Act's retention of sovereign immunity from the claims

---

[17]     *Id.* at 743.

[18]     *Id*. at 743-44.

[19]     *Id*. at 744.

enumerated in 28 U.S.C. § 2680, including those based on the exercise or performance of a discretionary function or duty, or arising out of interference with contract rights, if that were Congress' intent. The "[n]otwithstanding" phrase is an improbable vehicle for such a sea change in the government's liability. For example, the Federal Tort Claims Act expressly retains sovereign immunity from liability for punitive damages.[20] If Congress intended to strip the federal government of its governmental status in bankruptcy court, then punitive damages would be available under sections 106(b) and 106(c) of the Bankruptcy Code since section 106(a) expressly provides that punitive damages may not be awarded,[21] but no similar provision is included in either section 106(b) or 106(c).

We cannot resort to legislative history to discern the intent of Congress when there is ambiguity regarding waiver of sovereign immunity. As the Supreme Court has said, "legislative history has no bearing on the ambiguity point. . . . [T]he 'unequivocal

---

[20]    28 U.S.C. § 2674 (1994) ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.").

[21]    11 U.S.C. § 106(a)(3) (2004) ("The court may issue against a governmental unit an order, process, or judgment under such [enumerated sections of the Bankruptcy Code] or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages.").

35

expression' of elimination of sovereign immunity that we insist upon is an expression in the statutory text.  If clarity does not exist there, it cannot be supplied by a committee report."[22]

Focusing on whether a claim against the government "is property of the estate" is not helpful in determining whether section 106(c) permits assertion of the claims at issue in the case before us.[23] Even assuming that a pre-petition claim that is barred by sovereign immunity is not property of the debtor's estate, if section 106(c) abrogates sovereign immunity, sovereign immunity is not a bar to the pre-petition claim; therefore, the claim is property of the estate.  Whether Supreme Beef Processors prevails ultimately turns on the meaning of the "[n]otwithstanding" phrase in section 106(c).  Because that phrase is ambiguous, it does not waive the federal government's immunity from the claims enumerated in 28 U.S.C. § 2680.

For these reasons, I would affirm the district court's judgment.

---

[22]    *United States v. Nordic Village, Inc.*, 503 U.S. 30, 37 (1992).

[23]    11 U.S.C. § 106(c) (2004).

EDITH BROWN CLEMENT, Circuit Judge, joined by BENAVIDES, STEWART, and PRADO, Circuit Judges, concurring in part and dissenting in part:

I agree with the majority opinion's dismissal of Supreme Beef's § 106(b) claims. However, to reach its holding that Supreme Beef cannot use § 106(c) to offset the USDA's claim for overtime inspection services, the majority opinion ignores the plain language of § 106(c), disregards Congress's intent to allow offset against governmental claims, and rewrites the definition of property of the estate. Therefore, I respectfully dissent.

Section 106(c) of the bankruptcy code provides that, "[n]otwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate." A straightforward reading of § 106(c)'s plain language shows that the only limitation to offset is that the bankrupt's claim be property of the estate. *See* 2 COLLIER ON BANKRUPTCY § 106.02[4] (15th ed. 2006). Because § 106(c) contains an explicit waiver of sovereign immunity and because Supreme Beef's offset claim is property of the estate, Supreme Beef has the right to pursue its offset claim.

## A. 11 U.S.C. § 106(c) contains an express waiver of sovereign immunity.[24]

---

[24] The majority opinion introduces the issue of whether § 106(c) contains an express waiver of sovereign immunity, *see* Maj. Op. at 7, and later holds that § 106(c) does not effect "a waiver of substantive sovereign immunity." Maj. Op. at 13, 15. Presumably, "substantive sovereign immunity"—a term new to Fifth Circuit jurisprudence—refers to the sovereign immunity bar contained in the FTCA, rather than to the sovereign immunity waiver contained in § 106(c). It appears that the majority opinion never specifically addresses whether § 106(c) contains an express waiver of sovereign immunity, which is the first step required in a waiver-of-sovereign-immunity analysis. *See United States v. Nordic*

37

For § 106(c) to allow Supreme Beef to offset the USDA's $32,753 claim for overtime inspection services, there must first be an explicit, unequivocal waiver of sovereign immunity. *United States v. Nordic Village*, 503 U.S. 30, 33–34 (1992) ("Waivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed.") (internal quotation omitted). Section 106(c) allows a debtor to offset a governmental claim "[n]otwithstanding any assertion of sovereign immunity." Congress's waiver of sovereign immunity could not be more explicit. The Supreme Court has stated, when discussing the predecessors to §§ 106(b) and (c),[25] that "they plainly waive sovereign immunity with regard to monetary relief in two settings . . . ," one of which involves claims "capped by a setoff limitation." *Nordic Village*, 503 U.S. at 34 (Scalia, J.). Construing § 106(c) as anything other than an explicit waiver of sovereign immunity ignores the statute's plain language and Congress's intent manifested thereby. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.") (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241–42 (1989)).

Indeed, the waiver language in § 106(c) was added by Congress in 1994—along with other § 106 revisions—to clarify that sovereign immunity was expressly waived. *See* H.R. REP. NO. 103–835, at 42, *reprinted in* 1994 U.S.C.C.A.N. 3340, 3350–51. *See also* Elizabeth

*Village*, 503 U.S. 30, 33 (1992). *See also FDIC v. Meyer*, 510 U.S. 471, 484 (1994).

[25] Before Congress amended § 106 in 1994, what is now §§ 106(b) and (c) were codified at §§ 106(a) and (b).

38

Gibson, *Congressional Response to* Hoffman *and* Nordic Village*: Amended Section 106 and Sovereign Immunity*, 69 AM. BANKR. L.J. 311, 337 (1995) ("The insertion of the phrase '[n]otwithstanding any assertion of sovereign immunity' serves merely to make explicit the congressional intent to eliminate sovereign immunity as a defense to setoffs falling within the terms of the provision.") (alteration in original). The waiver language in § 106(c) is nearly identical to the waiver language in § 106(a), which Congress unmistakably modified to overturn the effects of the *Hoffman* and *Nordic Village* decisions. *See* H.R. REP. NO. 103–835, at 42, *reprinted in* 1994 U.S.C.C.A.N. 3340, 3350–51; *Cent. Va. Comm. College v. Katz*, 546 U.S. –, 126 S. Ct. 990, 995 n. 2 (2006) (noting that Congress modified what is now 11 U.S.C. § 106(a) to clarify that it waives the federal government's sovereign immunity). Therefore, any implication that § 106(c) does not explicitly waive sovereign immunity[26] not only creates a result incompatible with Congress's intention, but also creates inconsistency between §§ 106(a) and (c), with nearly identical language leading to waiver in (a) but not in (c).

## B.     Supreme Beef's claim is property of the estate.

Since § 106(c) contains an express waiver of sovereign immunity, this court must turn to the only remaining offset requirement in § 106(c). As the majority correctly notes, for Supreme Beef to offset the USDA's claim, its claim must be property of the estate as required in § 106(c). *See* Maj. Op. at 11–12. Property of the estate is defined as "all legal or equitable

---

[26]     The majority opinion implies as much when it states that "[t]he ['notwithstanding any assertion of sovereign immunity'] clause is designed to recognize the different procedural postures in which §§ 106(b) and (c) claims arise." *See* Maj. Op. at 13.

39

interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541. In

analyzing whether Supreme Beef's claim against the USDA meets this definition, this court's

recent decision in *Burgess v. Sikes (In re Burgess)*, 438 F.3d 493 (5th Cir. 2006) (en banc),

is instructive.[27] Burgess was a farmer who suffered a crop loss prior to filing for bankruptcy.

*Id.* at 495. After Burgess filed his bankruptcy petition and after he was discharged from

bankruptcy, Congress enacted legislation that entitled him to a relief payment. *Id.* The trustee

argued that the payment was property of the estate, while Burgess argued for sole possession.

*See id.*

In resolving the dispute, the court first rejected the trustee's argument that crop loss

together with potential relief legislation constituted property of the estate. *Id.* at 503. It held

that, because Burgess had "only a mere hope that crop-disaster-relief legislation would be

enacted" when he filed his bankruptcy petition, Burgess "had no interest, contingent or

otherwise, in the disaster-relief payment when he filed" that petition. *Id.* The court next

considered the trustee's argument that the crop loss itself was property of the estate and

concluded that Burgess had no legal prepetition claim because "[h]is crops were damaged by

---

[27]     The majority opinion states that *Burgess* is inapposite because, unlike in *Burgess*, the question here is "whether Supreme Beef has any claim apart from the FTCA." Maj. Op. at 12–13. However, since § 106(c) contains an express waiver of sovereign immunity, resolution of Supreme Beef's appeal necessarily turns on whether its claim is property of the estate, which is the sole requirement to setoff in § 106(c).  It is proper to consider this circuit's latest treatment of the property-of-the-estate definition. When discussing whether Supreme Beef's claim is property of the estate, the majority opinion does little more than quote the definition of property of the estate from the bankruptcy code and state that offset claims "are not freestanding and divorced from the substantive limitations that would be imposed outside of bankruptcy." *See* Maj. Op. at 11–12.

nature" rather than "at the hands of an individual or entity giving rise to a legal claim for reimbursement." *Id.* at 505–06.

From the *Burgess* court's analysis emerges a two-step property-of-the-estate inquiry. First, there must be a prepetition loss. Second, the claimant must have a prepetition *right* to recover that loss.[28] Supreme Beef's claim satisfies both steps. The loss here is the injury caused by the USDA inspectors, and Supreme Beef has a right to recover the loss pursuant to substantive Texas state law, assuming it proves the necessary facts after any remand. *See, e.g.*, *Burch v. Coca-Cola Co.*, 119 F.3d 305, 323–24 (5th Cir. 1997) (analyzing defamation claims under Texas law). Since Supreme Beef's claim satisfies these two steps, Supreme Beef's claim is property of the estate, and Supreme Beef has met the lone requirement to pursue an offset claim under § 106(c).

The majority opinion focuses on the fact that the FTCA's discretionary function exception, along with other FTCA provisions, would stand as a sovereign immunity bar to Supreme Beef's recovery outside of bankruptcy. In the majority opinion's view, because sovereign immunity would bar Supreme Beef's claim if brought through the FTCA outside of bankruptcy, its claim is not property of the estate.[29] This analysis improperly fails to

---

[28]    The Eleventh Circuit has recently followed *Burgess* in resolving a crop-loss property-of-the-estate dispute. *See Bracewell v. Kelley (In re Bracewell)*, 454 F.3d 1234, 1237–40 (11th Cir. 2006).

[29]    To the extent that the majority's position is drawn from § 106(a)(5)'s general statement regarding creation of substantive rights, that section must be read harmoniously with the more specific § 106(c). *See Gozlon-Peretz v. United States*, 498 U.S. 395, 407 (1991) ("A specific provision controls over one of more general application."). *See also Carmona v. Andrews*, 357 F.3d 535, 538 n.4 (5th Cir. 2004) (same). So long as Supreme Beef meets the lone requirement specifically listed in § 106(c), it is entitled to offset the USDA's

41

distinguish between a *right* and a *remedy* and construes property of the estate in a manner that is inconsistent with Fifth Circuit and Supreme Court precedent.

The FTCA provides both a limited waiver of sovereign immunity and federal court jurisdiction for tort claims brought by individuals against the United States. *See* 28 U.S.C. §§ 1346(b), 2674. FTCA's focus is on the remedy; what the FTCA does not do is provide the substantive law from which the *right* to recover arises. The state law does that. Both the text of the FTCA and the Supreme Court's analysis of that text reveal that the FTCA is merely a procedural vehicle through which state law claims are brought. *See* 28 U.S.C. § 1346(b)(1) (noting that the federal government can be sued in federal court "for injury or loss of property . . . under circumstances where the United States, if a private person, would be liable to the claimant *in accordance with the law of the place* where the act or omission occurred") (internal quotation omitted and emphasis added). *See also Meyer*, 510 U.S. at 477–78 (noting that the Supreme Court "ha[s] consistently held . . . [that the reference to] 'law of the place' means law of the State—*the source of substantive liability* under the FTCA") (emphasis added); *United States v. Brown*, 348 U.S. 110, 112 (1954) ("[T]he effect of the Tort Claims Act is to waive immunity *from recognized causes of action*.") (internal quotation omitted and emphasis added). Supreme Beef's claims against the USDA include claims for, among other things, slander and libel. These causes of action are creatures of Texas state law, which provides a *right* for Supreme Beef to recover. This right to recover from the USDA, under

claim.

42

*Burgess*, is property of the estate irrespective of whether the FTCA provides a procedural *remedy* for that right.

The majority's holding that the mere presence of a sovereign immunity bar in the FTCA prevents the existence of property of the estate cannot be reconciled with this court's en banc opinion in *Burgess*. As stated there, "sovereign immunity is *not* a bar to the existence of a prepetition cause of action for bankruptcy purposes." *Burgess*, 438 F.3d at 504 (emphasis added). Put otherwise, the presence of a sovereign immunity bar, here the FTCA's discretionary function and other exceptions, does not mean that no *right* to recover exists. The *Burgess* court drew this distinction citing to Supreme Court precedent. *See* 438 F.3d at 503–05 (citing *Williams v. Heard*, 140 U.S. 529 (1891), and *Milnor v. Metz*, 41 U.S. 221 (1842), and emphasizing that both decisions distinguish between the existence of a right and the ability to enforce that right)). This distinction should not be conflated.[30]

The majority's holding effectively requires *two* express sovereign immunity waivers for a bankrupt to offset a governmental claim: one express waiver in the bankruptcy code and

---

[30]    Because sovereign immunity, under *Burgess*, is inapposite to the property-of-the-estate inquiry and because § 106(c) contains an unequivocal waiver of sovereign immunity, a recent Tenth Circuit panel's opinion cited by the majority opinion is unpersuasive. *See*  Maj. Op. at 15 (citing *Franklin Savings Corp. v. United States (In re Franklin Savings Corp.)*, 385 F.3d 1279, 1287–89 (10th Cir. 2004) (holding that § 106 does not operate to waive the procedural requirements of the FTCA)). Adopting the Tenth Circuit approach also would create incoherence with Fifth Circuit precedent, specifically *W. Tex. Mktg. Corp. v. Kellogg (In re W. Tex. Mktg. Corp.)*, 54 F.3d 1194 (5th Cir. 1995). In *Kellogg*, a panel of this court held that the waiver of sovereign immunity in § 106(a) operates to waive sovereign immunity with respect to administrative filing requirements in the Internal Revenue Code. *See id*. at 1198–99 n.10. Endorsing the *Franklin* analysis would create confusion as to which prerequisites in non-bankruptcy law are waived by an explicit sovereign immunity waiver. The better approach is to look to the plain language of the bankruptcy code's sovereign immunity waiver for its limitations.

one in the FTCA. The Supreme Court requires one. *See Nordic Village*, 503 U.S. at 33–34. It is incongruous to add an additional prerequisite considering that Congress did not include this requirement in § 106(c) (or in the definition of property of the estate) and considering that sovereign immunity is less of a concern—not more, as the majority's holding implies—in bankruptcy situations. *Cf. Katz*, 126 S. Ct. at 995.

Moreover, where the claim against the government is only for offset, as Supreme Beef's is, sovereign immunity concerns are even further diminished because Supreme Beef cannot affirmatively recover from government coffers. Congress implicitly recognized this lessened concern; § 106(c) contains fewer limitations on the waiver than do §§ 106(a) and (b). In § 106(a), Congress limited the sovereign immunity waiver to situations covered by enumerated sections of the bankruptcy code and in § 106(b) limited waiver to situations in which the claim against the government is property of the estate and arises out of the same "transaction or occurrence" as the government's claim. Section 106(c) does have its own limitation, but it is a less restrictive one than §§ 106(a) or (b): "[T]here shall be offset . . . [for] any claim that is property of the estate."[31] It is not unreasonable to think that Congress provided a limitation in § 106(c) that is less restrictive than those in §§ 106(a) or (b) because a bankrupt claiming offset cannot affirmatively recover from the government.

## C. Conclusion

---

[31] The Supreme Court has recognized the textual limitations to sovereign immunity waivers in § 106. *See Hoffman v. Conn. Dep't of Income Maint.*, 492 U.S. 96, 101–02 (1989) (noting that the predecessors to §§ 106(b) and (c) "carefully limit[]the waiver of sovereign immunity").

Since Congress explicitly waived sovereign immunity and Supreme Beef's claim is property of the estate, I would hold that Supreme Beef can pursue its claim for offset against the USDA's $32,753 claim for overtime inspection services. I respectfully dissent from the majority's holding that Supreme Beef cannot offset the government's claim under § 106(c).